JONES DAY
Aaron Agenbroad (State Bar No. 242613)
alagenbroad@jonesday.com
Erin McMahon (State Bar No. 339474)
emcmahon@jonesday.com
555 California Street, 26th Floor
San Francisco, California  94104
Telephone:     +1.415.626.3939
Facsimile:     +1.415.875.5700

Attorneys for Defendant
UNITED PARCEL SERVICE, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYRUS MOFRAD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC., a corporation, and DOES 1 through 20, inclusive,<br><br>Defendants. | **Case No. 3:23-cv-01899-AMO**<br><br>**DEFENDANT UNITED PARCEL SERVICE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: December 12, 2024<br>Courtroom: 10, 19th Floor<br>Judge:  Hon. Araceli Martinez-Olguin<br>FAC Filed:  April 5, 2024<br>Trial Date:  April 15, 2025 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 12, 2024 in Courtroom 10 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA  94102, Defendant UNITED PARCEL SERVICE, INC. ("Defendant"), by and through its attorneys, will and hereby does move this Court for summary judgment pursuant to Federal Rule of Civil Procedure 56.

Defendant moves on the grounds that no material dispute exists as to Plaintiff's claims, and Plaintiff cannot establish one or more essential elements of said claims. This motion is based

on the Notice of Motion; the Memorandum of Points and Authorities; the Declaration of Erin

McMahon; the Declaration of Angel Dunn; the Declaration of  Keith Stoltz; and any further

evidence and argument presented to the Court.

Dated:  October 11, 2024                                    JONES DAY


By: /s/ Aaron L. Agenbroad
Aaron L. Agenbroad
Erin McMahon

Attorneys for Defendant
UNITED PARCEL SERVICE, INC.

1

## <u>TABLE OF CONTENTS</u>

2
**Page**

3   I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

4   II.   UNDISPUTED FACTS ................................................................................................ 2

5         A.    PLAINTIFF'S EMPLOYMENT AND ROLE AT UPS......................................... 2

6         B.    BONNIE CARTWRIGHT ATTEMPTED TO KISS PLAINTIFF ON
                TWO OCCASIONS AND HUG HIM ON THREE OCCASIONS. ..................... 3
7
8         C.    PLAINTIFF HAD A VOLATILE RELATIONSHIP WITH HIS
                SUPERVISOR, HENRY APODACA. ..................................................... 4

9         D.    OVER FIVE MONTHS AFTER THE ALLEGED HARASSMENT,
                PLAINTIFF SUBMITTED WRITTEN COMPLAINTS TO UPS........................ 5
10
11        E.    UPS APPROVED ALL OF PLAINTIFF'S REQUESTS FOR MEDICAL
                LEAVE........................................................................................... 5

12        F.    PLAINTIFF WAS TERMINATED AS PART OF A REDUCTION-IN-
                FORCE. .......................................................................................... 6
13
      III.  ARGUMENT ................................................................................................................. 8
14
15        A.    PLAINTIFF'S FIRST COUNT FOR SEXUAL HARASSMENT FAILS
                AS A MATTER OF LAW. ................................................................... 8

16              1.    The Alleged Harassing Conduct Was Not Severe Or Pervasive................. 9

17              2.    The Alleged Harassing Conduct Was Not Objectively Offensive............ 10

18              3.    The Alleged Harassing Conduct Was Not Subjectively Offensive. ......... 12

19        B.    PLAINTIFF'S THIRD AND SIXTH COUNTS FOR RETALIATION
                FAIL AS A MATTER OF LAW. .......................................................... 12
20
21              1.    The Undisputed Facts Show There Was No Causal Link Between
                      Plaintiff's Protected Activity and Termination. ........................................ 13

22              2.    Plaintiff Cannot Establish Any Additional Adverse Employment
                      Actions That Were Connected To His Protected Activity. ........................ 15
23
24        C.    PLAINTIFF'S SECOND COUNT FOR FAILURE TO PREVENT
                SEXUAL HARASSMENT AND/OR RETALIATION FAILS AS A
                MATTER OF LAW. ........................................................................... 19
25
26        D.    PLAINTIFF'S FOURTH AND SEVENTH COUNTS FOR FAILURE TO
                ACCOMMODATE AND ENGAGE IN THE INTERACTIVE PROCESS
                FAIL AS A MATTER OF LAW. .......................................................... 19
27
28

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

E.     PLAINTIFF'S EIGHTH AND NINTH COUNTS FOR WRONGFUL
TERMINATION IN VIOLATION OF PUBLIC POLICY FAIL AS A
MATTER OF LAW. ........................................................................... 20

F.     PLAINTIFF'S FIFTH COUNT FOR INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS FAILS AS A MATTER OF LAW. ........................... 21

G.     PLAINTIFF CANNOT RECOVER PUNITIVE DAMAGES AS A
MATTER OF LAW. ........................................................................... 22

IV.   CONCLUSION ...................................................................................... 22

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

CASES

4

*Akers v. County of San Diego*,
    95 Cal.App.4th 1441 ................................................................................................ 18

5

*Alejandro v. ST Micro Electronics, Inc.*,
    178 F.Supp. 3d 850 (N.D. Cal. 2016) ...................................................................... 21

6

7

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................... 8

8

*Brooks v. City of San Mateo*,
    229 F.3d 917 (9th Cir. 2000)..................................................................................... 9

9

*Candelore v. Clark County Sanitation Dist.*,
    975 F.2d 588 (9th Cir. 1992)................................................................................... 10

10

11

*Carlos v. Old Dominion Freight Line, Inc.*,
    726 Fed. Appx. 576 (9th Cir. 2018) ....................................................................... 21

12

*Chamberlin v. 101 Realty, Inc.*,
    915 F.2d 777 (1st Cir.1990)..................................................................................... 10

13

14

*Cole v. Fair Oaks Fire Prot. Dist.*,
    43 Cal.3d 148 (1987) ............................................................................................... 21

15

*Crouch v. Trinity Christian Ctr. of Santa Ana, Inc.*,
    39 Cal. App. 5th 995 (2019) ................................................................................... 22

16

17

*Doe v. Dept. of Corrections and Rehabilitation*,
    43 Cal. App. 5th 721 (2019) ................................................................................... 18

18

*Ellison v. Brady*,
    924 F.2d 872 (9th Cir. 1991).................................................................................... 11

19

20

*Featherstone v. Southern Cal. Permanente Med. Group*,
    10 Cal. App. 5th 1150 (2017) ................................................................................. 20

21

*FTC v. Stefanchik*,
    559 F.3d 924 (9th Cir. 2009)..................................................................................... 8

22

23

*Hanson v. Lucky Stores, Inc.*,
    74 Cal. App. 4th 215 (1999) ................................................................................... 21

24

*Harris v. Forklift Systems, Inc.*,
    510 U.S. 17 (1993)................................................................................................... 11

25

26

*Haynal v. Target Stores*,
    1996 WL 806706 (S.D. Cal. 1996) ........................................................................ 21

27

28

*Hellman v. Weisberg,*
   360 Fed.Appx. 776 (9th Cir. 2009) ................................................................. 16

*Holmes v. Petrovich Development Co., LLC,*
   191 Cal. App. 4th 1047 (2011) ...................................................................... 15

*Hughes v. Derwinski,*
   967 F.2d 1168 (7th Cir. 1992) ....................................................................... 16

*Janken v. GM Hughes Elecs.,*
   46 Cal. App. 4th 55 (1996) ........................................................................... 22

*Jordan v. Clark,*
   847 F.2d 1368 (9th Cir.1988) ........................................................................ 10

*Lawler v. Montblanc N. Am., LLC,*
   704 F.3d 1235 (9th Cir. 2013) ......................................................................... 8

*Light v. Department of Parks & Recreation*
   14 Cal.App.5th 75 (2017) .............................................................................. 18

*Lyle v. Warner Bros. Television Prod.,*
   38 Cal.4th 264 (2006) .................................................................................... 9

*Malais v. Los Angeles City Fire Dept.,*
   150 Cal.App.4th 350 (2007) .......................................................................... 15

*Martin v. Lockheed Missiles,*
   29 Cal. App. 4th 1718 (1994) ........................................................................ 13

*McRae v. Department of Corrections and Rehabilitation,*
   142 Cal. App. 4th 377 (2006) ........................................................................ 15

*Meeks v. AutoZone, Inc.,*
   24 Cal. App. 5th 855 (2018) .......................................................................... 15

*Muller v. Automobile Club of So. Cal.,*
   61 Cal. App. 4th 431 (1998) ........................................................................... 9

*Nissan Fire & Marine Ins. Co., Ltd. V. Fritz Cos., Inc.,*
   210 F.3d 1099 (9th Cir. 2000) ......................................................................... 8

*Quinn v. Green Tree Credit Corp.,*
   159 F.3d 759 (2d Cir.1998) ........................................................................... 10

*Richmond v. ONEOK, Inc.,*
   120 F.3d 205 (10th Cir. 1997) ....................................................................... 16

*Saxton v. American Tel. & Telegraph Co.,*
   10 F.3d 526 (7th Cir. 1993) ............................................................................. 9

*Schaffer v. GTE, Inc.,*
   40 Fed. Appx. 552 (9th Cir. 2002) ................................................................. 21

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*Scotch v. Art Inst. of Cal.*,
  173 Cal. App. 4th 986 (2009) .......................................................................... 19

*Scott v. Phoenix Schs., Inc.*,
  175 Cal. App. 4th 702 (2009) .......................................................................... 22

*Soremekun v. Thrifty Payless, Inc.*,
  509 F.3d 978 (9th Cir. 2007) ............................................................................ 8

*Swanson v. Morongo Unified School Dist.*,
  232 Cal. App. 4th 954 (2014) .......................................................................... 19

*Taylor v. Nabors Drilling USA, LP*,
  222 Cal.App.4th 1228 (2014) .............................................................. 8, 10, 12

*Thomas v. Dept. of Corrections*,
  77 Cal. App. 4th 507 (2000) ............................................................................ 19

*Thornhill Publ'g Co., Inc. v. GTE Corp.*,
  594 F.2d 730 (9th Cir. 1979) ............................................................................ 14

*Thrifty Oil Co. v. Bank of Am. Nat'l. Trust & Sav. Ass'n.*,
  322 F.3d 1039 (9th Cir. 2003) ........................................................................... 8

*Trujillo v. N. Cty. Transit Dist.*,
  63 Cal. App. 4th 280 (1998) ............................................................................ 19

*Weiss v. Coca–Cola Bottling Co. of Chicago*,
  990 F.2d 333 (7th Cir.1993) ............................................................................. 10

*Westendorf v. W. Coast Contractors of Nevada, Inc.*,
  712 F.3d 417 (9th Cir.2013) ............................................................................. 10

*Winarto v. Toshiba America*,
  274 F.3d 1276 (9th Cir. 2001) .......................................................................... 13

*Wong v. Pape Machinery, Inc.*,
  370 Fed.Appx. 871 (9th Cir. 2010) .................................................................. 20

*Yanowitz v. L'Oreal USA, Inc.*,
  36 Cal. 4th 1028 (2005) ............................................................................ 12, 15

**STATUTES**

Americans with Disabilities Act ............................................................... passim

Cal. Civ. Code § 3294(a) ............................................................................. 22

California Workers' Compensation Act ......................................................... 21

Gov. Code § 12940(k) .................................................................................. 19

**RULES**

Fed. R. Civ. P. 56(a) ....................................................................................... 7

- v -

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

3          Plaintiff Cyrus Mofrad ("Plaintiff") is a former employee who worked at United Parcel

4  Service, Inc. ("UPS") from September 24, 2018 to September 30, 2023.  In this action, Plaintiff

5  sues UPS asserting claims for sexual harassment, retaliation, failure to prevent harassment and

6  retaliation, failure to provide reasonable accommodation and engage in the interactive process,

7  wrongful termination, and intentional infliction of emotional distress.  Summary judgment is

8  warranted as each of his claims is fundamentally and fatally flawed as a matter of law.

9          As an initial matter, his primary claim for hostile work environment should be dismissed

10  as he falls far short of establishing any conduct approaching the requisite "severe and pervasive"

11  standard.  Specifically, Plaintiff fails to meet either of the required *subjective* or *objective*

12  standards, as all he admits that occurred was a single kiss on the cheek, one attempted kiss, and

13  three attempted hugs by a female delivery driver who was his subordinate. As Plaintiff's

14  admissions make clear, he was not exercised over these minor incidents, but rather was angry

15  with his former supervisor, Henry Apodaca, for allegedly requesting that he falsify certain work

16  reports, and berating him for refusing to do so. Even if true, such conduct is simply *not* sexual

17  harassment and *cannot* serve as the basis for a claim of sexual harassment.  Accordingly, his

18  failure to prevent harassment, retaliation, and wrongful termination claims similarly fail.

19          Plaintiff's claim of failure to accommodate is even more tortured.  First, Plaintiff himself

20  admits that UPS approved each and every one of his requests for medical leave, so he has no

21  factual basis – none – supporting his failure to accommodate claims. And second, the undisputed

22  evidence demonstrates that his final "accommodation request" came after the decision to

23  terminated his employment as part of a broad-based reduction-in-force was both final and had

24  already been communicated to him.  There is no evidence to the contrary and this claim should be

25  dismissed as well.

26          Finally, and perhaps most fatal to his claims, while Plaintiff maintains that UPS

27  terminated him in retaliation for his sexual harassment complaints and corresponding medical

28

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

leave, the undisputed facts establish that Plaintiff's role was eliminated as part of a company-wide reduction-in-force. Specifically, UPS used employees' original hire dates as the sole selection criteria in affected departments, and – based upon that objective criteria – Plaintiff's original hire date Plaintiff was the least senior out of all of the on-road supervisors at his facility and he was therefore selected for layoff.  The layoff, which took effect on September 30, 2023, came over two years after Plaintiff's alleged harasser, Bonnie Cartwright, had separated from the company, and seventeen months after his supervisor, Henry Apodaca, had separated from the company. Accordingly, this layoff, and the criteria applied in executing it, provide a legitimate, nondiscriminatory and nonretaliatory basis for his termination and there is no evidence of pretext.

At bottom, Plaintiff's claims are made from whole cloth.  He is unable to demonstrate the existence of any legally cognizable hostile work environment.  And his termination had nothing to do with his sex, disability, or any alleged protected activity, and he will be unable to establish that his termination was retaliatory in any way.  For these reasons, Plaintiff's claims against UPS lack merit as a matter of law. This Court should grant Defendant's Motion for Summary Judgment in its entirety.

## II.    UNDISPUTED FACTS

### A.    PLAINTIFF'S EMPLOYMENT AND ROLE AT UPS.

Plaintiff began working for UPS in September 2018 as a part-time air ramp supervisor working at the local airport. *See* Deposition of Cyrus Mofrad, at McMahon Decl. Exhibit A ("Mofrad Dep.") 19:24-20:4. As part of his onboarding for this role, Plaintiff reviewed and signed a copy of UPS's Professional Conduct and Anti-Harassment Policy. Mofrad Dep. 29:3-24; Declaration of Angel Dunn ("Dunn Decl.") Exhibit A.  The policy makes clear that UPS does not tolerate harassment, and that employees have a number of mechanisms for reporting harassment, including reporting it to managers, human resources, and the UPS helpline.  *Id*.  Plaintiff had access to the UPS helpline website throughout the entirety of his employment.  Mofrad Dep. 90:13-19.  In January 2019, he was promoted to part-time package center supervisor, and in November 2019 he was promoted again to on-road supervisor.  Mofrad Dep. 21:3-11; 22:15-

24:13. Plaintiff reviewed and signed a copy of UPS's Professional Conduct and Anti-Harassment Policy a second time when he was promoted to on-road supervisor. Mofrad Dep. 30:13-32:6; Dunn Decl. Exhibit B. He worked the night shift in while in this role. Mofrad Dep. 27:12-15. As an on-road supervisor, Plaintiff was responsible for training and overseeing delivery drivers (approximately 50 to 80 drivers per day), auditing the trucks of delivery drivers, and ensuring that every package was either delivered or attempted. Mofrad Dep. 22:17-23:3; 27:16-28:2. Because delivery drivers, by definition, leave the facility each day to deliver packages unsupervised, Plaintiff's interactions with drivers was limited to mere minutes each day, and as the p.m. shift, he was not assigned to oversee specific, individual drivers. *Id.*

### B. BONNIE CARTWRIGHT ATTEMPTED TO KISS PLAINTIFF ON TWO OCCASIONS AND HUG HIM ON THREE OCCASIONS.

In April 2021, while at work, a female delivery driver, Bonnie Cartwright, walked toward Plaintiff and kissed him on the cheek. Mofrad Dep. 32:18-33:14. The kiss lasted for "a second or two" until Plaintiff pushed her off. Mofrad Dep. 34:19-22. After the kiss, Plaintiff walked to the men's restroom and then resumed his shift. Mofrad Dep. 48:15-49:2. Plaintiff does not recall the specific date on which this incident occurred. Mofrad Dep. 33:15-21. The next day, during Plaintiff's daily meeting with his supervisor, Apodaca, he informed Apodaca about the cheek kiss by Cartwright. Mofrad Dep. 50:14-53:7. Plaintiff also does not recall the specific date on which the conversation with Apodaca took place. Mofrad Dep. 53:8-17.

Approximately five days later, Cartwright walked up to Plaintiff while he was auditing trucks and attempted to kiss him on the cheek again, but he pushed her away. Mofrad Dep. 55:6-57:1. Cartwright held Plaintiff for approximately three seconds and her face came "within an inch" of Plaintiff's face before he pushed her off. Mofrad Dep. 62:15-20; 66:22-67:7. Again, Plaintiff proceeded to work and finished his shift. Mofrad Dep. 68:2-3. The next day, during their daily meeting, Plaintiff informed Apodaca about the second attempted kiss. Mofrad Dep. 68:10-21. He did not report either the kiss or the attempted kiss to anyone else – for over six months – until October 2021, when he submitted an ethics hotline complaint. Mofrad Dep. 69:24-70:1.

The only other incidents that Plaintiff asserts are "up to three" other times (maximum)

where Cartwright came into the same room as him when he was "off-guard" and briefly hugged him before he "immediately" pushed her off.  Mofrad Dep. 71:5-18; 72:8-14. Plaintiff does not remember, and has no way of identifying, the specific dates on which these hugs occurred. Mofrad Dep. 73:3-8. On all three occasions, Plaintiff continued to work and finished his shift. Mofrad Dep. 77:2-4.  These minor events are the only incidents that Mofrad alleges.   Mofrad Dep. 81:14-20. Cartwright resigned from UPS on June 30, 2021 – two months after the alleged incidents and four months before Mofrad ever submitted a formal complaint. Dunn Decl. ¶ 7; *see also* Deposition of Franklin Harris ("Harris Dep.") at McMahon Decl. Exhibit C, 49:16-17.  After this date, Plaintiff did not have any interaction with her. Mofrad Dep. 84:2-3.

### C.    PLAINTIFF HAD A VOLATILE RELATIONSHIP WITH HIS SUPERVISOR, HENRY APODACA.

Separately, Plaintiff alleges a number of minor nondiscriminatory workplace disagreements that took place between himself and Apodaca.  First, Plaintiff alleges that Apodaca forced him to audit Cartwright's truck.  Mofrad Dep. 118:12-20.  However, Plaintiff himself admitted that auditing Cartwright's truck was part of his job responsibilities as an on-road supervisor. Mofrad Dep. 56:6-13; 118:12-15.  Plaintiff also alleges that Apodaca changed his shift once without notice and took away his "D day" (i.e., day off) once without notice. Mofrad Dep. 121:1-6; 118:8. These two alleged incidents took place between September and August 2021 – four months after the alleged sexual harassment took place, and before any ethics hotline complaints had been submitted.  Mofrad Dep. 128:2-6; McMahon Decl. Exhibit G.  Plaintiff also alleges that Apodaca asked him to falsify package scans. Mofrad Dep. 117:22-25. But Plaintiff also admits that he refused to take part in the falsification, and was never disciplined for his refusal. Mofrad Dep. 134:1-6. Similarly, Plaintiff complains that Apodaca asked him to participate in timecard fraud, but at the same time admits that Apodaca's timecard fraud was prevalent across the entire facility, was not limited to Plaintiff, and did not have any impact on Plaintiff's employment. Mofrad Dep. 145:16-20; 146:8-9.   Finally, Plaintiff complains about the "development needed" performance rating given to him by Apodaca at the end of 2021. Mofrad Dep. 138:18-141:6.  Critically, however, Plaintiff received one of his highest performance

1  reviews as an on-road supervisor by Apodaca mere months earlier in July 2021. Mofrad Dep.

2  141:3-19; McMahon Decl. Exhibit B.  Additionally, Plaintiff admits that the end-of-year

3  "development needed" rating did not have any impact on Plaintiff's job responsibilities, role, or

4  pay. Mofrad Dep. 150:2-24.

5       Plaintiff's medical records, as well as his own written statements, reveal that he is

6  primarily upset with Apodaca – not Cartwright – for the miscellaneous workplace grievances. A

7  report from one of his doctors confirms that "the actions of the supervisor had more impact than

8  the unwanted hugging and kissing from the female coworker," therefore suggesting "the primary

9  irritant is the political struggles with the supervisor." McMahon Decl. ¶ 7; McMahon Decl.

10  Exhibit F.  Additionally, Plaintiff conceded to his therapist that the workplace disagreements with

11  Apodaca "bothered [him] more than the woman hugging me." Mofrad Dep. 113:4-23; McMahon

12  Decl. ¶ 7; McMahon Decl. Exhibit F.  Apodaca was ultimately terminated by UPS in April 2022,

13  seventeen months before Plaintiff's termination. Harris Dep. 70:16-71:2; Dunn Decl. ¶ 8.

### D.  OVER FIVE MONTHS AFTER THE ALLEGED HARASSMENT, PLAINTIFF SUBMITTED WRITTEN COMPLAINTS TO UPS.

On September 26, 2021, before he ever submitted a complaint regarding sexual

harassment, Plaintiff submitted two complaints against Apodaca – one alleging that Apodaca

failed to give him certain days off, and one alleging that Apodaca asked him to falsify package

scans. Harris Dep. 17:8-23; 19:20-25.  These complaints did not involve or even reference

Cartwright or any sexual harassment. Mofrad Dep. 88:13-19. It was not until four weeks after

Plaintiff submitted this complaint against Apodaca – six months after the alleged sexual

harassment took place (and four months after Cartwright had resigned) – that Mofrad decided to

submit a complaint against Cartwright and Apodaca for sexual harassment. Mofrad Dep. 95:25-

97:12; Harris Dep. 22:4-13; Dunn Decl. ¶ 7.  UPS ultimately investigated and substantiated these

complaints.  Harris Dep 25:3-6.  At this point, Cartwright had already left UPS and Plaintiff was

encouraged to take an approved leave of absence. Mofrad Dep. 173:10-22; Dunn Decl. ¶ 7.

### E.  UPS APPROVED ALL OF PLAINTIFF'S REQUESTS FOR MEDICAL LEAVE.

- 5 -
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    Plaintiff never consistently returned to work. He took an approved, job-protected leave of

2    absence from October 2021 through February 2022. Mofrad Dep. 173:10-22.  During this time,

3    he was paid disability benefits by Hartford Insurance.  Mofrad Dep. 175:16-19.  When this leave

4    ended in February 2022, Plaintiff did not return to work, despite his doctor clearing him to return.

5    Mofrad Dep. 176:2-5; McMahon Decl. ¶ 7; McMahon Decl. Exhibit F.  Instead, he disagreed

6    with his doctor's directive and remained out on an unauthorized leave.  *Id.*  In May 2022, he

7    submitted paperwork from another doctor placing him on total disability, and UPS approved a

8    second leave of absence. Mofrad Dep. 176:8-25.  Ultimately, Plaintiff was paid for all of the

9    months he was out on "unauthorized" leave except for one month – March 2022.  Mofrad Dep.

10   177:10-12. He was never disciplined for taking unauthorized leave. Mofrad Dep. 177:13-16. In

11   July 2022, Plaintiff returned to work for less than three weeks. Mofrad Dep. 187:23-188:10. On

12   August 9, 2022, he went out on leave again. Mofrad Dep. 190:20-191:11. He remained out on this

13   leave until he was terminated as part of a company-wide reduction in force in September 2023.

14   Mofrad Dep. 191:8-11.

15   Indeed, Plaintiff confirms that UPS approved every single leave of absence he requested:

16       Q.  So October 2021 through February 2022, that was approved by UPS; correct?

17       A.  Eventually it was approved.

18
     Q.  And that was extended ultimately through July 2022; correct?
19

20       A.  Yes, yes.

21       Q.  And then you returned to work for approximately three weeks. And went out

22           on approved leave again; correct?

23       A.  That's correct.

24       Q.  Oaky. So given what we just talked about, UPS ultimately approved all of your

25           leave requests, correct?

26       A.  Yes.

     Mofrad Dep. 193:21-194:12.
27

28   **F.    PLAINTIFF WAS TERMINATED AS PART OF A REDUCTION-IN-
            FORCE.**

On September 1, 2023, Plaintiff was notified that his role was being eliminated as part of a company-wide reduction in force ("Project Relay") intended to reduce costs and right-size staffing for U.S. package operations due to changes in post-COVID business volume. FAC ¶ 32; Deposition of Keith Stoltz ("Stoltz Dep.") at McMahon Decl. Exhibit D, 58:22-25; Dunn. Decl. Exhibit C. This was a broad-based layoff impacting thousands of employees. The sole and dispositive criteria used to determined which on-road supervisor would be impacted at the Oakland facility was length of service (i.e., original hire date). Stoltz Dep. 51:17-52:2; Declaration of Keith Stoltz ("Stoltz Decl.") at ¶ 2; Stoltz Decl. Exhibit A. Simply put, Plaintiff was selected for termination because he had the most recent original hire date out of all of the on-road supervisors at the Oakland facility. *Id.*  Local-level management was not involved in the selection decisions. Stoltz Dep. 25:20-26:20. Indeed, by the time the decision had been made, Apodaca had been separated from the company for over a year. Harris Dep. 70:16-71:2.  The decisions were instead made at a corporate level, and the decision-makers were not involved with or aware of employee leaves of absence or ADA accommodation requests. Stoltz Dep. 25:20-26:2; 82:2-23.  The reduction-in-force decision-makers therefore did not take Plaintiff's leave of absence into account when making the selection decision.  Stoltz Dep. 82:15-23. Quite the contrary, there was another on-road supervisor at the Oakland facility on a leave of absence at the time of the reduction-in-force who was not selected for termination because he had an earlier original hire date (and therefore, greater seniority) than Plaintiff. Stoltz Decl. ¶ 3; Stoltz Decl. Exhibit A.  Plaintiff was selected for termination because he had the most recent original hire date out of all of the on-road supervisors at the Oakland facility. *Id.*

On September 18, 2023 – weeks after he was notified of his termination – Plaintiff submitted a request for ADA accommodations. Deposition of Angel Dunn ("Dunn Dep.") at McMahon Decl. Exhibit E, 55:11-56:9; Dunn Decl. Exhibit D.  Plaintiff's ADA request was subsequently denied because he had already been selected for termination as part of the reduction in force. Dunn Dep. 66:1-12; Dunn Decl. Exhibit E.   Plaintiff was laid off  on September 30, 2023. Dunn. Decl. Exhibit C.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    **III.    ARGUMENT**

2          Summary judgment is appropriate when, as is the case here, "there is no genuine dispute

3    as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

4    56(a). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury

5    could return a verdict for the unmoving party." *Thrifty Oil Co. v. Bank of Am. Nat'l. Trust & Sav.*

6    *Ass'n*., 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S.

7    242, 248 (1986)). On any claim that the non-moving party will have the burden of proof at trial

8    (as is the case with Plaintiff's claims here), the movant may obtain summary judgment either by

9    producing evidence negating an essential element of the non-moving party's claim or by merely

10   pointing out an absence of evidence supporting the non-moving party's claim. *See Soremekun v.*

11   *Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007); *Nissan Fire & Marine Ins. Co., Ltd. V.*

12   *Fritz Cos., Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000). If the movant satisfies this initial burden,

13   then the opposing party must go beyond the pleadings and "show a genuine issue of material fact

14   by presenting affirmative evidence from which a jury could find in [its] favor." *FTC v.*

15   *Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "[B]ald assertions or a mere scintilla of evidence in

16   [his] favor" will not suffice. *Id*. (citation omitted). "If the nonmoving party fails to produce

17   enough evidence to create a genuine issue of material fact, the moving party wins the motion for

18   summary judgment." *Nissan Fire*, 201 F.3d at 1103.

19        **A.    PLAINTIFF'S FIRST COUNT FOR SEXUAL HARASSMENT FAILS AS A**
            **MATTER OF LAW.**
20
21          Plaintiff's first cause of action for sexual harassment fundamentally fails because he

22   cannot establish that he was subjected to conduct that was sufficiently severe or pervasive so as to

     alter the working conditions of his employment and create an abusive work environment. To

23   prevail on his hostile work environment claim, Plaintiff must show that: (1) he is a member of a

24   protected group; (2) he was subjected to harassment because he belonged to this group; and (3)

25   the alleged harassment was so severe or pervasive that it created a hostile work environment. *See*

26   *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013).  Actionable hostile work

27   environment harassment must also be "both objectively and subjectively offensive.". *Taylor v.*

28

*Nabors Drilling USA, LP*, 222 Cal.App.4th 1228, 1241 (2014).  Plaintiff fails to meet either of these standards, let alone both, and accordingly his sexual harassment claim fails as a matter of law.

### 1.    The Alleged Harassing Conduct Was Not Severe Or Pervasive.

Actionable harassment cannot be "occasional, isolated, sporadic, or trivial, rather the plaintiff must show a concerted pattern of harassment of a repeated, routine, or a generalized nature." *Muller v. Automobile Club of So. Cal*., 61 Cal.App.4th 431, 446 (1998) (citation omitted); see *also Lyle v. Warner Bros. Television Prod*., 38 Cal.4th 264, 284 (2006) (purported wrongdoing must be "more than a few isolated incidents").  Isolated incidents can *only* support a hostile work environment claim where they are "extremely severe." *See Saxton v. American Tel. & Telegraph Co.*, 10 F.3d 526, 528, 534 (7th Cir. 1993) (interpreting federal analogue to FEHA and finding no hostile work environment where plaintiff was rubbed and kissed on one occasion, and resisted an attempted groping on another).

In *Brooks v. City of San Mateo*, the plaintiff was a telephone dispatcher. 229 F.3d 917, 921 (9th Cir. 2000). While working alone on the night shift, a more senior coworker put his hand on the plaintiff's stomach and commented on its softness and sexiness. *Id*. She told him to stop, physically repelling him. But the harasser maneuvered behind her and continued his battery, forcing his hand under her sweater and bra, and fondling her bare breast. She shoved him away a second time.  As the harasser approached the plaintiff again, another dispatcher arrived on the scene and the battery ended. *Id*. The harasser pled no contest to a criminal charge of sexual assault, and notwithstanding the fact that the plaintiff in *Brooks* was indisputably sexually assaulted, the Ninth Circuit rejected her hostile work environment sexual harassment claim, finding that it was not sufficiently pervasive. *Id*. at 924.

In stark contrast to the criminal sexual assault in *Brooks*, Plaintiff complains merely about (1) a single kiss on the cheek, (2) a single <u>attempted</u> kiss, and (3) a couple of "hugs" by a delivery driver.  FAC ¶¶ 13-14; Mofrad Dep. 32:18-33:14; 56:15-57:1; 71:5-18; 72:8-14.  On the first occasion, the entire kiss on the cheek lasted for "a second or two." Mofrad Dep. 34:19-22. On the

second occasion, Ms. Cartwright held Plaintiff for approximately three seconds and her face came "within an inch" of Plaintiff's face before he pushed her off. Mofrad Dep. 62:15-20; 67:5-7. Plaintiff describes up to three other times (maximum) where Ms. Cartwright came into the same room as him when he was "off-guard" and briefly hugged him before he "immediately" pushed her off. Mofrad Dep. 71:5-18; 72:8-14.  Ninth Circuit caselaw makes absolutely clear that Plaintiff has no actionable hostile work environment claim with these facts. *See Candelore v. Clark County Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir. 1992) ("isolated incidents of sexual horseplay alleged by Candalore took place over a period of years and were not so egregious as to render Candelore's work environment 'hostile.'"); *Jordan v. Clark*, 847 F.2d 1368, 1374–75 (9th Cir.1988) (abusive environment not created where defendant improperly touched plaintiff, called her at home, and coworkers told "off-color" jokes at work); *Westendorf v. W. Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 421 (9th Cir.2013) (employee subjected to crude sexual remarks by an employee she saw once a week for three months was not sufficiently severe or pervasive); Caselaw interpreting Title VII, the federal analogue to California's FEHA, similarly makes clear that Cartwright's conduct did not remotely approach the requisite severe or pervasive standard. *See Weiss v. Coca–Cola Bottling Co. of Chicago,*  990 F.2d 333, 337 (7th Cir.1993) (supervisor kept asking plaintiff about her personal life, called her a dumb blonde, placed hand on her shoulder at least six times, asked her out, placed "I love you" signs in her work area and tried to kiss her once in a bar and twice at work held insufficient); *Chamberlin v. 101 Realty, Inc.*, 915 F.2d 777, 783 (1st Cir.1990) (five sexually motivated advances over a four or five week period held insufficient for hostile work environment); *Quinn v. Green Tree Credit Corp*., 159 F.3d 759, 768 (2d Cir.1998)  (statement that plaintiff had "sleekest ass" in office coupled with intentional touching of plaintiff's "breasts with papers that he was holding in his hand" was held insufficient). At bottom, the trivialities of a kiss on the cheek, a second kiss and a couple of hugs fail, as a matter of law, to establish a hostile work environment.

**2.      The Alleged Harassing Conduct Was Not Objectively Offensive.**

Plaintiff's sexual harassment claim is legally deficient for the secondary, and independent,

reason that Plaintiff fails to establish that Cartwright's alleged conduct was *objectively* offensive. To be actionable, "a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Taylor v. Nabors Drilling USA, LP*, 222 Cal.App.4th 1228, 1241 (2014) (citation omitted).  Whether an environment is sufficiently  objectively hostile or abusive must be judged by "looking at all the circumstances, including the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993) (analyzing analogous federal law under same standard). The standard of the "reasonable person in the position of the plaintiff" exists "in order to shield employers from having to accommodate the idiosyncratic concerns of the rare hyper-sensitive employee." *Ellison v. Brady*, 924 F.2d 872, 879 (9th Cir. 1991) (analyzing analogous federal law under same standard).  In essence, "egg shell sensitivities" cannot support a sexual harassment claim.

In this case, an objectively reasonable man in Plaintiff's position would not be offended by a peck on the cheek, an attempted peck on the cheek, and three hugs.  As an initial matter, Plaintiff concedes that such conduct is the equivalent of a customary greeting to many. Mofrad Dep. 36:3-17. Due to the nature of the delivery driver role (which is responsible for leaving the facility every day and delivering packages unsupervised), coupled with significant scope of Plaintiff's own responsibilities overseeing up to 80 delivery drivers in a given day,  Plaintiff's interactions with Cartwright were already severely limited.  Mofrad Dep. 27:16-22.  Plaintiff also admits that the interactions with Cartwright were temporally limited, as she separated from UPS less than three months after the first alleged instance of harassment. Mofrad Dep. 83:11-23; Harris Dep. 70:16-20; 99:7-13.  Moreover, Plaintiff was in a position of power comparative to his alleged harasser as she reported to him, and a reasonable on-road supervisor in his position would not consider the behavior of a subordinate delivery driver to be sufficiently abusive. Mofrad Dep. 27:16-22. Plaintiff's gender must also not be ignored. *See Ellison*, 924 F.2d at 879 (applying a

"reasonable woman" standard when analyzing sexual harassment under parallel federal law, noting that "[m]en, who are rarely the victims of sexual assault, may view sexual conduct in a vacuum without a full appreciation of the social setting or the underlying threat of violence that a woman may perceive").  Here, Plaintiff has failed to advance evidence that conduct that would be objectively offensive to a reasonable man, and so his hostile work environment claim fails on this ground as well.

### 3.    The Alleged Harassing Conduct Was Not Subjectively Offensive.

A final, additionally fatal flaw in Plaintiff's sexual harassment claim is that he fails to even establish that he <u>subjectively</u> perceived Ms. Cartwright's conduct to be hostile or abusive. *Taylor,* 222 Cal.App.4th at 1241 ("[a] plaintiff who does not perceive the workplace as hostile or abusive will not prevail, even if it objectively is so"). Here, Plaintiff's own admissions lay bare that he was not particularly upset or impacted by the limited incidents.  Plaintiff admits that he cannot identify the dates on which the alleged harassment occurred. Mofrad Dep. 53:8-17; 73:3-8. He admits he has no written records – no notes, texts to friends or family – from the time period during which the alleged harassment took place.  Mofrad Dep.  33:15-21; 79:4-15. Before he <u>ever</u> submitted a complaint to UPS's Ethics Hotline regarding the alleged sexual harassment, he submitted numerous complaints about workplace disagreements with his supervisor, Mr. Apodaca.  Harris Dep.  17:8-23; 19:20-25.  Indeed, perhaps most tellingly, Plaintiff conceded to his therapist that the workplace disagreements with Apodaca "bothered [him] more than the woman hugging me." Mofrad Dep. 113:4-23; McMahon Decl. ¶ 7; McMahon Decl. Exhibit F. And a report from one of his doctors confirms that "the actions of the supervisor had more impact than the unwanted hugging and kissing from the female coworker," therefore suggesting "the primary irritant is the political struggles with the supervisor." McMahon Decl. ¶ 7; McMahon Decl. Exhibit F.  Plaintiff's own admissions make clear that he did not even perceive Ms. Cartwright's conduct as significantly hostile or abusive, and his sexual harassment claim will fail for this reason as well.

### B.    PLAINTIFF'S THIRD AND SIXTH COUNTS FOR RETALIATION FAIL AS A MATTER OF LAW.

1    To establish a prima facie case of retaliation under FEHA, Plaintiff must show (1) he

2    engaged in a "protected activity," (2) UPS subjected him to an adverse employment action, and

3    (3) a causal link existed between the protected activity and UPS's action.  *See Yanowitz v.*

4    *L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).  For the reasons that follow, Plaintiff's

5    retaliation claims[1] fail.

6    ### 1.    The Undisputed Facts Show There Was No Causal Link Between Plaintiff's Protected Activity and Termination.

7

8    Plaintiff alleges that he was terminated in retaliation for reporting sexual harassment,

9    having a disability, and requesting an accommodation. FAC ¶ 86.  All three of these theories fail

10   because it is undisputed that Plaintiff was terminated as part of a company-wide reduction in

11   force, which is a legitimate, non-discriminatory reason for termination. *Winarto v. Toshiba*

12   *America*, 274 F.3d 1276, 1295 (9th Cir. 2001); *Martin v. Lockheed Missiles*, 29 Cal. App. 4th

13   1718, 1732, 35 Cal. Rptr. 2d 181 (1994).

14   It is undisputed that Plaintiff's role was eliminated in September 2023 as part of a

15   company-wide reduction in force ("Project Relay") intended to reduce costs and right-size

16   staffing for U.S. package operations due to change in business volume. Stoltz Dep. 58:22-25;

17   Dunn. Decl. ¶ 4; Dunn Decl. Exhibit C. It is also undisputed that the sole and dispositive criteria

18   used to determined which on-road supervisor would be impacted at the Oakland facility was

19   length of service (i.e., original hire date). Stoltz Dep. 51:17-52:2; Ex. 122.  Plaintiff was selected

20   for termination, in accordance with this selection criteria, because he had the most recent original

21   hire date out of all of the on-road supervisors at the Oakland facility. *Id.*; Ex. 122.   Local-level

22   management was not involved in the selection decisions. Stoltz Dep. 25:20-26:20.  The decisions

23   were made at a corporate level, and the decision-makers were not involved with or aware of

24   employee leaves of absence or ADA accommodation requests. Stoltz Dep. 25:20-26:2; 82:2-23.

25   These are the plain facts, and Plaintiff cannot dispute them.

26   He reported the alleged sexual harassment by Cartwright in 2021, two years before his

27

28   _____

[1] Plaintiff brings two distinct counts of retaliation. However, both counts allege retaliation in violation of the same law (FEHA), and therefore UPS analyzes these claims together.

termination. Mofrad Dep. 95:25-97:12; Harris Dep. 22:4-13. Indeed, both Ms. Cartwright (the alleged harasser) and Mr. Apodaca (Plaintiff's supervisor) had been separated from UPS for *years* by the time of Plaintiff's termination. Harris Dep. 70:16-20; 99:7-13.  During this intervening time, Plaintiff remained employed by UPS and his leave requests continued to be approved. Plaintiff was never told that his termination was related to his harassment complaints, he has no documents showing that his termination was related to his harassment complaints, and he does not even know who made the decision to terminate his employment.  Mofrad Dep. 167:14-23.  He has no evidence – none – and his own speculation and conjecture are legally insufficient to establish any causal link whatsoever between his 2021 harassment reports and his 2023 termination.

It is similarly undisputed that the reduction-in-force decision-makers did not take Plaintiff's leave of absence into account when making the selection decision. To the contrary, there was another on-road supervisor at the Oakland facility on a leave of absence at the time of the reduction-in-force who was <u>not</u> selected for termination because he had an earlier original hire date (and therefore, greater seniority) than Plaintiff. Stoltz Dep. Ex. 122. Plaintiff therefore cannot establish any causal link between his medical leave and termination. Finally, in connection with his ADA retaliation claim, it is undisputed that Plaintiff submitted a request for ADA accommodations <u>after</u> the selection decision had been made and <u>after</u> he had been notified of his termination. Dunn Dep. 55:11-56:9; Dunn Decl. ¶ 5; Dunn Decl. Exhibit D. Plaintiff therefore cannot establish any causal link between his ADA request and termination.

At bottom, Plaintiff does not know who made the decision to terminate his employment, when the decision was made, or any of the surrounding circumstances regarding the company-wide reduction in force. Mofrad Dep. 168:9-169:2.  He has no evidence (beyond illogical speculation) that his termination was related to his sexual harassment complaints, medical leave, and/or ADA requests. *Id*.  It is well established that conclusory and speculative statements are insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Thus, Plaintiff's claim that the termination decision constituted illegal

retaliation fails as a matter of law.

### 2.    Plaintiff Cannot Establish Any Additional Adverse Employment Actions That Were Connected To His Protected Activity.

Plaintiff complains about a host of additional workplace disagreements with his supervisor, Mr. Apodaca, none of which constitute actionable retaliation under FEHA because they are (1) not adverse employment actions, and (2) not causally linked to Plaintiff's sexual harassment complaints.  To establish a retaliation claim, a Plaintiff must demonstrate that he was subjected to an adverse employment action that materially affected the terms, conditions, or privileges of employment. *McRae v. Department of Corrections and Rehabilitation*, 142 Cal.App.4th 377, 386 (2006) (*citing Yanowitz v. L'Oreal USA, Inc*., 36 Cal.4th 1028, 1051-1052 (2005)); *see also Malais v. Los Angeles City Fire Dept*., 150 Cal.App.4th 350, 357 (2007) (change that is "merely contrary to the employee's interests or not to the employee's liking is insufficient"); *Holmes v. Petrovich Development Co., LLC*, 191 Cal.App.4th 1047, 106 (2011) (minor or relatively trivial adverse actions that cannot properly be viewed as materially affecting the terms, conditions or privileges of employment and so are not actionable); *Meeks v. AutoZone, Inc.*, 24 Cal.App.5th 855, 879 (2018) (threat of an adverse employment action, never carried out, does not constitute an adverse employment action).  Here, Plaintiff does not – and cannot – allege that Mr. Apodaca subjected him to a substantial adverse change in the terms and conditions of employment. Plaintiff's disagreements with his supervisor did not lead to any action against him; he was never disciplined; never suffered a reduction in pay or change in duties; and continued employment as an on-road supervisor until he was impacted by the reduction-in-force. And even assuming *arguendo* that such minor workplace squabbles <u>did</u> constitute adverse employment actions (they do not), the undisputed facts show there is no causal connection between these disagreements and Plaintiff's sexual harassment complaints.

| **Allegation** | **Adverse Employment Action?** | **Causal Connection to Sexual Harassment Complaints?** |
|---|---|---|
| Mr. Apodaca requested that Plaintiff audit Cartwright's truck between | <u>Not an adverse employment action</u>. Plaintiff admits that auditing trucks was a part of Plaintiff's job duties as an on-road | <u>No causal connection.</u> Auditing trucks was part of Plaintiff's job duties as an on-road supervisor. Mofrad Dep. 118:12-1.  Plaintiff audited Ms. Cartwright's truck well before any alleged |

- 15 -

| | | |
|---|---|---|
| May and June 2021. FAC ¶ 17; Mofrad Dep. 118:12-20. | supervisor. Mofrad Dep. 118:12-15 ("He made you audit Cartwright's trucks. But wasn't that your responsibility as on-road supervisor? A. That's right.") In addition to not impacting Plaintiff's job responsibilities, Mr. Apodaca's requests that Plaintiff audit Cartwright's truck did not impact Plaintiffs' pay or other terms and conditions of his employment. Mofrad Dep. 118:22-23. | harassment occurred, and he would have been required to audit Ms. Cartwright's truck absent any sexual harassment complaint. |
| Mr. Apodaca changed Plaintiff's shift once in September 2021. Mofrad Dep. 121:1-6; 128:2-7. | <u>Not an adverse employment action.</u> Such an isolated, minor change in Plaintiff's schedule did not materially alter Plaintiff's employment and therefore cannot rise to the level of an adverse employment action. *See Hellman v. Weisberg,* 360 Fed.Appx. 776, 778 (9th Cir. 2009) ("not every disagreeable workplace action constitutes retaliation; rather, retaliation must produce an injury or harm") (internal quotation marks omitted). | <u>No causal connection.</u> Plaintiff testified that this change in his shift occurred in "September" or "maybe August." Mofrad Dep. 128:2-6. But as established above, Plaintiff informed Mr. Apodaca of the alleged harassment in April 2021, four months prior. *See, Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (1997) (3–month period between protected activity and adverse action insufficient to establish causal link); *Hughes v. Derwinski*, 967 F.2d 1168, 1174–1175 (1992) *274 (4–month period insufficient). Moreover, Plaintiff did not submit an ethics hotline complaint about the sexual harassment until October 2021, so the change in his shift could not possibly have been caused by his formal report. Plaintiff himself even confirmed that, absent mere speculation, there is no evidence indicating a causal connection. Mofrad Dep. 129:10-131:1. |
| Mr. Apodaca "took [Plaintiff's] D days away" once in August 2021. Mofrad Dep. 118:8. | <u>Not an adverse employment action.</u> Plaintiff testified that Mr. Apodaca changed his "D day," which is a day an employee can have off that must be approved. Mofrad Dep. 121:7-25. Again, if true, such conduct did not materially alter Plaintiff's employment. *See Hellman v.* | <u>No causal connection.</u> Plaintiff alleges this conduct took place on August 31, 2021. McMahon Decl. ¶ 8; McMahon Decl. Exhibit G. However, he had informed Mr. Apodaca of the alleged harassment four months prior. *See , Richmond,* 120 F.3d at 209 (3–month period nsufficient); *Hughes,* 967 F.2d at 1174–1175 (4–month period insufficient). Moreover, Plaintiff did not submit any ethics hotline complaint until September 2021 (and he did not submit an ethics |

| | | |
|---|---|---|
| | *Weisberg,* 360 Fed.Appx. at 778. Plaintiff admits it did not impact Plaintiff's pay or job responsibilities. Mofrad Dep. 127:10-25. | hotline complaint about sexual harassment until October 2021), so Apodaca's conduct regarding Plaintiff's D day could not possibly have been caused by his formal reports.  Harris Dep.  17:8-23; 19:20-25; 22:4-13; Mofrad Dep. 95:25-96:25.  Plaintiff also confirmed that, beyond his mere speculation and suspicions, there is no evidence indicating a causal connection between his harassment complaints and Mr. Apodaca changing his D day. Mofrad Dep. 128:8-16. Indeed, Plaintiff himself admits that the trivial "D day" disagreements with Apodaca were separate and distinct from retaliation. Mofrad Dep. 87:21-22 ("So D day falls into one category. Then we have retaliation. It was a different category"). |
| Mr. Apodaca asked Plaintiff to falsify package scans. Mofrad Dep. 117:22-25. | <u>Not an adverse employment action.</u><br>Despite Apodaca's requests that he falsify package scans, Plaintiff refused to do so. Mofrad Dep. 135:20-136:5. In May or June 2021, Plaintiff was informed by his division manager that the falsification of scans was against company policy.  Mofrad Dep. 134:1-6. It is undisputed that Plaintiff was never disciplined or otherwise harmed for participating in the conduct <u>or</u> ultimately refusing to participate in the conduct. *Id.* | <u>No causal connection.</u><br>Plaintiff confirmed that, absent mere speculation, there is no evidence indicating a causal connection between his harassment complaints and Mr. Apodaca requesting that he falsify package scans. Mofrad Dep. 134:7-18. Further, Plaintiff's September 2021 ethics hotline complaint regarding the scan falsification did not ever reference Ms. Cartwright or sexual harassment – not once. Mofrad Dep. 88:13-19.  Plaintiff's own signed written statement submitted to UPS confirms that Mr. Apodaca's package scan falsification requests were unrelated to Plaintiff's sexual harassment complaints. McMahon Decl. ¶ 8; McMahon Decl. Exhibit G. ("I believe at this point that I am being discriminated against due to my race and age. I have been treated unfair, unethical and unprofessionally (harassed and retaliation) since I recognized the fraudulent instructions and refused to do them.") |
| Mr. Apodaca asked Plaintiff to participate in timecard fraud. FAC ¶ 17; Mofrad Dep. 145:16-20. | <u>Not an adverse employment action.</u><br>Plaintiff himself admitted that Apodaca's timecard fraud requests did not have any impact on his employment. Mofrad Dep. 145:19-20 ("it has nothing to do with me"); 146:8-9 ("[i]t was | <u>No causal connection.</u><br>Plaintiff's testimony confirms that the timecard fraud was prevalent across the Oakland facility.  Apodaca therefore was not – and could not have been – singling Plaintiff out because of his sexual harassment complaints. Mofrad Dep. 145:21- 25 ("the beauty of the whole thing |

- 17 -

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | extremely bothersome but he went on stealing people's money. But it's not my issue"). | is…he had everybody's employee ID number and their password. And he would use their number to change people's timecards and change the volume they delivered."); 146:1-8 ("in July when I went back to work, they came in and said, 'Did this happen?' I said 'Yes.' They said 'We just wanted to make sure because every other on-road sup said the same thing.' He was using everybody's information to adjust timecards.") |
| Mr. Apodaca gave Plaintiff a written performance rating of "development needed" for the end of 2021. FAC ¶ 17; Mofrad Dep. 138:18-141:6. | Not an adverse employment action. Plaintiff confirmed that the "development needed" rating did not have any impact on his job responsibilities, role, or pay. Mofrad Dep. 150:2-24. This is not sufficient to establish an adverse employment action. *See Light v. Department of Parks & Recreation* (2017) 14 Cal.App.5th 75, 92 ("a mere oral or written criticism of an employee…does not meet the definition of an adverse employment action under [the] FEHA"); *Akers v. County of San Diego*, 95 Cal.App.4th 1441(negative evaluation is only sufficient to establish an adverse employment action when it is used to substantially and materially change the terms and conditions of employment). | No causal connection. Plaintiff informed Mr. Apodaca of the alleged sexual harassment in April 2021. Yet Apodaca gave Plaintiff a "strong performance" rating in July 2021. Mofrad Dep. 141:3-19; McMahon Decl. ¶ 3; McMahon Decl. Exhibit B. Plaintiff acknowledged this was a strong performance review, and he admitted to knowing nothing about the performance evaluation process. Mofrad Dep. 144:3-6. The "development needed" rating came eight months after the alleged sexual harassment, and six months after Cartwright had been separated from UPS. Plaintiff confirmed that, absent mere speculation, there is no evidence indicating a causal connection between his harassment complaints and the "development needed" performance rating at the end of 2021. Mofrad Dep. 148:5-9 ("Q.  So for a 12-month period, it's your belief  that he's only talking about Cartwright here?  A.  And maybe there's somebody else too. I have no clue. As I said, I'm not Henry.") |

The crux of Plaintiff's retaliation claim relies on disagreements with and complaints about his working relationship with his supervisor, Mr. Apodaca. Even when considered as a whole, Plaintiff's volatile relationship with Mr. Apodaca fails to rise to the level of an "adverse employment action" under FEHA because it did not culminate in any sort of adverse change to the terms and conditions of his employment. *See Doe v. Dept. of Corrections and Rehabilitation*,

43 Cal.App.5th 721 (2019) (no adverse employment action where plaintiff's supervisor criticized his work, threatened him, and assigned him certain duties so that he would miss a union meeting, because none of the supervisor's actions "resulted in any sort of formal or informal discipline or demotion in job responsibilities").  By contrast, Plaintiff was subjected to a series of one time, minor events that, while perhaps making him angry and/or upset, were neither causally connected to his sexual harassment complaints nor sufficient to establish an adverse employment action that materially altered his employment. *See Thomas v. Dept. of Corrections*, 77 Cal. App. 4th 507, 511 (2000) ("If every minor change in working conditions . . . were a materially adverse action then any 'action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a [lawsuit].'") (citation omitted).  Therefore, the remainder of Plaintiff's retaliation allegations fail as a matter of law.

### C.    PLAINTIFF'S SECOND COUNT FOR FAILURE TO PREVENT SEXUAL HARASSMENT AND/OR RETALIATION FAILS AS A MATTER OF LAW.

Under FEHA, it is unlawful for an employer to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring. *See* Gov. Code § 12940(k). However, an employer can <u>only</u> be held liable for failing to take reasonable steps where the employee establishes that he was actually the victim of such unlawful discrimination, harassment, or retaliation. *See Trujillo v. N. Cty. Transit Dist.*, 63 Cal. App. 4th 280, 284 (1998). "An actionable claim under section 12940, subdivision (k) is dependent on a claim of actual discrimination." *Scotch v. Art Inst. of Cal.*, 173 Cal. App. 4th 986, 1021 (2009).

As demonstrated above, Plaintiff's claims for harassment and retaliation fail as a matter of law. *See, supra*, Sections III.A. and III.B. Consequently, Plaintiff's claim for failure to prevent fails because there was no harassment or retaliation to prevent.

### D.    PLAINTIFF'S FOURTH AND SEVENTH COUNTS FOR FAILURE TO ACCOMMODATE AND ENGAGE IN THE INTERACTIVE PROCESS FAIL AS A MATTER OF LAW.

To succeed on a failure to accommodate claim, Plaintiff must establish that (1) he had a cognizable disability under FEHA, (2) he was qualified to perform the essential functions of his

1    position, and (3) UPS failed to reasonably accommodate his disability. *Swanson v. Morongo*

2    *Unified School Dist.*, 232 Cal. App. 4th 954, 969 (2014) (citations omitted).  But the undisputed

3    facts show that UPS <u>did</u> provide Plaintiff with a reasonable accommodation, repeatedly, and thus

4    his accommodation claims will fail as a matter of law.

5            Plaintiff alleges that he was entitled to a reasonable accommodation – which included a

6    "medical leave of absence" – but that UPS "made no timely, good faith effort to engage in an

7    interactive process." FAC ¶¶ 68, 71, 97. But it is undisputed that UPS approved <u>all</u> of Plaintiff's

8    medical leave requests. Mofrad Dep. 194:10-12 ("UPS ultimately approved all of your leave

9    requests, correct?  A.  Yes.").  And plaintiff remained out on approved medical leave until he was

10   terminated as part of a reduction in force in September 2023. Mofrad Dep. 191:8-11.  Plaintiff

11   therefore cannot establish that UPS failed to reasonably accommodate his disability.

12           To the extent Plaintiff argues that the September 2023 denial of his ADA accommodation

13   request constituted a failure to accommodate, such a theory will also fail as a matter of law.

14   Plaintiff was notified of his termination as part of a reduction-in-force on September 1, 2023.

15   FAC ¶ 32; Stoltz Dep. 58:22-25; Dunn. Decl. ¶ 4; Dunn Decl. Exhibit C.  He received paperwork

16   informing him that he was being terminated as part of a reduction in force and offering him a

17   generous separation allowance. *Id.*.  Yet he initiated a request for ADA accommodations on

18   September 18, 2023, after the termination decision had been made and communicated to him.

19   Dunn Dep. 55:11-56:9; Dunn. Decl. ¶ 5; Dunn Decl. Exhibit D.  FEHA does not require an

20   employer to accommodate an employee's disability after its non-discriminatory decision to

21   terminate him, nor would any such accommodation be reasonable. *Wong v. Pape Machinery, Inc.*,

22   370 Fed.Appx. 871, 873 (9th Cir. 2010). Therefore, Plaintiff cannot establish that his ADA

23   accommodation request – made well after the termination decision had been made – constituted a

24   failure to accommodate or engage in the interactive process.

25           **E.    PLAINTIFF'S EIGHTH AND NINTH COUNTS FOR WRONGFUL**
                     **TERMINATION IN VIOLATION OF PUBLIC POLICY FAIL AS A**
26                   **MATTER OF LAW.**

27           Plaintiff brings two counts for wrongful termination in violation of public policy – one

28

- 20 -

based on violations of FEHA (Count 8), and one based on violations of the Americans with Disabilities Act ("ADA") (Count 9). Given that these claims are based entirely on the same allegations as Plaintiff's statutory retaliation claims (see Section III.B.1., *supra*), they are duplicative and must be dismissed for the same reasons. *See Featherstone v. Southern Cal. Permanente Med. Group*, 10 Cal. App. 5th 1150, 1169 (2017) (holding that public policy claim failed when underlying FEHA claim failed); *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 229 (1999) (same); *see also Alejandro v. ST Micro Electronics, Inc.*, 178 F.Supp. 3d 850, 866 (N.D. Cal. 2016) (finding that plaintiff's wrongful termination claim fails where defendant was entitled to summary judgment on all of plaintiff's underlying causes of action).

## F.    PLAINTIFF'S FIFTH COUNT FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAILS AS A MATTER OF LAW.

For two independent reasons, Plaintiff's fifth cause of action fails. First, this tort claim is preempted by the WCA.  UPS's alleged infliction of emotional distress occurred at the workplace. FAC ¶¶ 13-21.  It necessarily follows that any allegedly related acts of intentional infliction of emotional distress are based on conduct normally occurring in the workplace, in the normal course of the employer-employee relationship, and thus the claim is preempted by the WCA. *See Schaffer v. GTE, Inc*., 40 Fed. Appx. 552, 557 (9th Cir. 2002) ("[U]nder California law, claims for negligent and intentional infliction of emotional distress made within the context of the employment relationship are within the exclusive remedy provisions of the California Workers' Compensation Act"); *Haynal v. Target Stores*, 1996 WL 806706, at *6 (S.D. Cal. Dec. 19, 1996) ("Plaintiff's complaint clearly indicates that her alleged emotional injury arose in the context of her employment relationship. As such, this claim is preempted by the Workers' Compensation Act.")[2]

---

[2] As established above, Plaintiff's FEHA claims for sexual harassment, retaliation, and failure to accommodate, as well as his derivative claims for wrongful termination and failure to prevent sexual harassment and retaliation, fail as a matter of law. *See, supra*, Sections III.A.-III.E. Accordingly, any resulting emotional distress claim likewise fails. *See Carlos v. Old Dominion Freight Line, Inc.*, 726 Fed. Appx. 576, 579 (9th Cir. 2018) (holding that plaintiff's intentional infliction of emotional distress claim was preempted by the WCA when underlying FEHA claims failed); *see also Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal.3d 148, 160 (1987) ("[W]hen the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in

- 21 -

1    Second, Plaintiff must also establish "extreme and outrageous conduct" by UPS "with the

2    intention of causing, or reckless disregard of the probability of causing, emotional distress"—a

3    tall order he cannot meet. *Crouch v. Trinity Christian Ctr. of Santa Ana, Inc*., 39 Cal. App. 5th

4    995, 1007 (2019). At best, the conduct alleged by Plaintiff constitutes nothing more than ordinary

5    management decisions. *Janken v. GM Hughes Elecs*., 46 Cal. App. 4th 55, 80 (1996) ("Managing

6    personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct

7    essential to the welfare and prosperity of society. . . . If personnel management decisions are

8    improperly motivated, the remedy is a suit against the employer for discrimination.")  Thus,

9    Plaintiff's intentional infliction of emotional distress claim fails as a matter of law.

10    **G.    PLAINTIFF CANNOT RECOVER PUNITIVE DAMAGES AS A MATTER OF LAW.**

11    Plaintiff's claim for punitive damages against UPS fails as a matter of law because there is

12    no evidence of fraud, oppression, or malice by any of the company's "managing agents."  *See*

13    Cal. Civ. Code § 3294(a).  "Punitive damages are appropriate if the defendant's acts are

14    reprehensible, fraudulent or in blatant violation of law or policy."  *Scott v. Phoenix Schs., Inc*.,

15    175 Cal.App.4th 702, 715-16 (2009).  The "mere carelessness or ignorance of the defendant does

16    not justify the imposition of punitive damages."  *Id*. at 716. Here, there is no evidence to suggest

17    that any managing agent of UPS engaged in the kind of conduct that would meet this standard.

18    Plaintiff's claim for punitive damages must therefore be dismissed.

19    **IV.    CONCLUSION**

20    For the foregoing reasons, UPS respectfully requests that the Court GRANT summary

21    judgment in its favor on all of Plaintiff's claims.

22

23

24

25

26    _____

27    negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional

28    disturbance.")

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   Dated:  October 11, 2024                    JONES DAY

2

3                                               By: */s/ Aaron L. Agenbroad*

4                                                   Aaron L. Agenbroad
                                                    Erin McMahon
5
                                               Attorneys for Defendant
6                                              UNITED PARCEL SERVICE, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT