Drew Lewis Esq. (SBN 309288)
drew@drewlewis.law
**DREW LEWIS, PC**
3010 Lava Ridge Ct. Ste. 120
Roseville, CA 95661
Tel: (833) 600-7400

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

CYRUS MOFRAD,

                    Plaintiff(s),

        v.

UNITED PARCEL SERVICE, INC., A
CORPORATION,

                    Defendant(s).

Case No.:   23-CV-01899-AMO

Assigned to the Hon. Araceli Martinez-Olguin

**PLAINTIFF'S TRIAL BRIEF**

| | |
|---|---|
| Pretrial Conf: | September 10, 2025 |
| Time: | 11:00 am |
| Courtroom: | 10 – 19th Floor |
| | |
| Jury Trial: | October 21, 2025 |
| Time: | 08:30 am |
| Courtroom: | 10 – 19th Floor |
| | |
| Complaint Filed: | March 21, 2023 |

# Table of Contents

I.    INTRODUCTION ...............................................................................................1

II.   FACTUAL BACKGROUND ..............................................................................1

III.  LEGAL ANALYSIS ...........................................................................................3

    A.  UPS is Liable for Sexual Harassment Under the FEHA. ...............................3

        1.  Plaintiff Suffered Sexual Harassment That Was "Severe or Pervasive." ..............3

        2.  UPS is Liable for the Sexual Harassment Plaintiff Experienced. ...............4

        3.  The Harassment Was Objectively Offensive. ...............5

        4.  The Harassment Was Subjectively Offensive. ...............7

    B.  UPS Is Liable for Failure to Prevent Sexual Harassment under the FEHA. ...................8

    C.  UPS Is Liable for Intentional Infliction of Emotional Distress ...........................9

        1.  UPS Is Liable for IIED Based on Its Ratification of Henry Apodaca's Failure to Take Any Corrective Action in Response to Plaintiff's Complaints of Harassment. .................................................................10

        2.  UPS Is Also Liable for IIED Because Henry Apodaca Was Acting in the Course and Scope of His Employment When He Failed to Report Cartwright's Harassment and Failed to Take Corrective Action. ...............11

IV.   DAMAGES .......................................................................................................12

    A.  Plaintiff's Non-Economic Damages. ...........................................................12

        1.  UPS Failed to Timely Designate Experts to Rebut Dr. Rowe's Opinion Testimony. .................................................................13

        2.  UPS Cannot Isolate or Exclude Elements of Plaintiff's Experience in a Ploy to Reduce Damages. ...............13

        3.  UPS Cannot Exclude Evidence Relevant to the Jury's Assessment of Plaintiff's Damages. ...............14

        4.  UPS Cannot Prevail on its Avoidable Consequences Defense. ...............15

    B.  Plaintiff's Economic Damages. ...................................................................16

V.    CONCLUSION .................................................................................................17

PLAINTIFF'S TRIAL BRIEF                          Case No.: 23-CV-01899-AMO

# Table of Authorities

## Cases

*Aguilar v. Avis Rent A Car System, Inc.*
  (1999) 21 Cal.4th 121 ...........................................................................................4

*Bailey v. San Francisco Dist. Attorney's Office*
  (2024) 16 Cal.5th 611 ...........................................................................................4

*C.R. v. Tenet Healthcare Corp.*
  (2009) 169 Cal.App.4th 1094.............................................................................10

*Crouch v. Trinity Christian Center of Santa Ana, Inc.*
  (2019) 39 Cal.App.5th 995..................................................................................11

*Doe v. Roman Catholic Archbishop of Los Angeles*
  (2016) 247 Cal.App.4th 953..................................................................................9

*Ellison v. Brady*
  (9th Cir. 1991) 924 F.2d 872..................................................................................5

*Fisher v. San Pedro Peninsula Hospital*
  (1989) 214 Cal.App.3d 590..........................................................................4, 7, 9

*Garcia v. Praxair, Inc.*
  (E.D. Cal., Jan. 5, 2021, No. 1:18-CV-01493-SAB) 2021 WL 38183 ..................16

*Lyle v. Warner Brothers Television Productions*
  (2006) 38 Cal.4th 264 ...........................................................................................5

*M.F. v. Pacific Pearl Hotel Management LLC*
  (2017) 16 Cal.App.5th 693....................................................................................8

*Mary M. v. City of Los Angeles*
  (1991) 54 Cal.3d 202............................................................................................11

*McKinney v. California Portland Cement Co.*
  (2002) 96 Cal.App.4th 1214................................................................................16

*Miller v. Department of Corrections*
  (2005) 36 Cal.4th 446 ...........................................................................................6

*Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.*
  (2002) 103 Cal.App.4th 1021................................................................................8

*Oncale v. Sundowner Offshore Services, Inc.*
  (1998) 523 U.S. 75 .................................................................................................6

PLAINTIFF'S TRIAL BRIEF                                    Case No.: 23-CV-01899-AMO

*Ortiz v. Dameron Hospital Assn.*
　(2019) 37 Cal.App.5th 568 ................................................................................4

*Pacific Gas & Electric Co. v. Superior Court*
　(1994) 28 Cal.App.4th 174 ...............................................................................16

*Rieger v. Arnold*
　(2002) 104 Cal.App.4th 451 ...............................................................................4

*Singleton v. United States Gypsum Co.*
　(2006) 140 Cal.App.4th 1547 .............................................................................6

*State Dept. of Health Services v. Superior Court*
　(2003) 31 Cal.4th 1026 ...................................................................................15

*Taylor v. Nabors Drilling USA, LP*
　(2014) 222 Cal.App.4th 1228 ..........................................................................6, 7

*Thomas v. Regents of University of California*
　(2023) 97 Cal.App.5th 587 ...............................................................................10

*U.S. v. Figueroa-Lopez*
　(9th Cir. 1997) 125 F.3d 1241 ..........................................................................13

*Ventura v. ABM Industries Inc.*
　(2012) 212 Cal.App.4th 258 .............................................................................10

*Wawrzenski v. United Airlines, Inc.*
　(2024) 106 Cal.App.5th 663 ...............................................................................4

**Statutes**

Gov. Code § 12923 ...............................................................................................4

Gov. Code § 12940 ......................................................................................5, 7, 8, 9

Gov. Code § 12950 ...............................................................................................9

**CACI**

CACI No. 1600: Intentional Infliction of Emotional Distress .......................................9

CACI No. 2521A: Work Environment Harassment ....................................................5

CACI No. 3710: Ratification ................................................................................10

CACI No. 3722. Scope of Employment – Unauthorized Acts ...............................11, 12

PLAINTIFF'S TRIAL BRIEF                                          Case No.: 23-CV-01899-AMO

1

## I.    INTRODUCTION

Plaintiff Cyrus Mofrad is a first-generation Persian immigrant who was employed as an

on-road supervisor with Defendant UPS. Beginning in April 2021 through June 2021, Bonnie

Cartwright, one of Mofrad's direct reports engaged in unwelcome conduct towards him which

included unwelcome kissing, attempted kissing, groping Plaintiff's buttocks, and grabbing

Mofrad from behind. Plaintiff promptly reported each incident to his supervisor, Henry

Apodaca, who was the Business Manager of the Lake Merrit Center in Oakland where Mofrad

worked. Apodaca refused to do anything about Mofrad's repeated complaints. Mofrad

subsequently reported the incidents to the company's ethics hotline.

Franklin Harris, UPS' Human Resources Business Partner Manager, designated person

most knowledgeable on the topic, confirmed during his deposition that the company did an

investigation into the allegations, interviewing several witnesses, and substantiated each and

every incident of sexual harassment.  Harris confirmed that Cartwright's conduct violated UPS'

sexual harassment policy. Harris conceded that Apodaca should have taken corrective action,

but did not. Finally, Harris confirmed that in response to Cartwright's conduct and Apodaca's

failure to act, UPS did not discipline Apodaca.

UPS has stridently maintained throughout the case that unwelcome kissing, attempted

kissing, groping Plaintiff's buttocks and grabbing Mofrad from behind are minor interactions

that no "reasonable person" would find objectively offensive. UPS also appears to argue that

even if Mofrad did experience sexual harassment, he could have avoided the emotional and

psychological effects had he reported the conduct to the ethics hotline earlier.

Mofrad, who loved his job, was forced to go out on medical leave. In the nearly two

years that he was out on medical leave, before being terminated, Mofrad was regularly treated

by medical professionals for the psychological disorders cause by the harassment that Dr.

Jessica Rowe, Psy.D. diagnosed as anxiety, PTSD  and depression. More than just a diagnosis,

these disorders have deeply affected all aspects of his life, as he will testify at trial.

## II.    FACTUAL BACKGROUND

The following facts are well-established and will be substantiated at trial:

PLAINTIFF'S TRIAL BRIEF                                                     Case No.: 23-CV-01899-AMO

- On two separate occasions, Bonnie Cartwright, a driver Plaintiff supervised, without warning, attempted to kiss Plaintiff on the lips, and grabbed his buttocks. The first time this happened, Plaintiff turned his head and Cartwright's kiss landed on his cheek. The second time, Plaintiff successfully deflect Cartwright's kiss. However, on both occasions Cartwright managed to grope Plaintiff's buttocks.

- On at least three subsequent occasions, Cartwright approached Plaintiff and grabbed him from behind.

- Plaintiff told Cartwright to stop and left the area immediately after each incident.

- These incidents between Cartwright and Plaintiff were witnessed by multiple UPS employees.

- Plaintiff promptly reported Cartwright's conduct to his supervisor, Henry Apodaca.

- Apodaca was Plaintiff's direct supervisor and the appropriate person for reporting sexual harassment.

- Apodaca took no action in response to Plaintiff's reports of sexual harassment. He did not discipline Cartwright and did not report the harassment to anyone else at UPS.

- Commencing at or about the same time as Plaintiff's complaints to Apodaca of sexual harassment, Apodaca began demanding Plaintiff engage in falsifying UPS business records including driver package scans and timecards. Plaintiff resisted Apodaca's demands. That led to further friction between Apodaca and Plaintiff, including threats of discipline and termination by Apodaca.

- The ongoing sexual harassment by Cartwright, combined with Apodaca's refusal to take any corrective action to stop the harassment, caused Plaintiff severe stress and anxiety which became so severe Plaintiff began suffering anxiety attacks. Although Bonnie Cartwright separated from UPS at the end of June 2021, Plaintiff's mental and emotional distress did not diminish.

- In September 2021, Plaintiff contacted UPS Corporate and reported Cartwright's harassment, Apodaca's failure to take corrective action, and Apodaca's orchestration

2

of package scan and timecard falsification.

- In November 2021, while meeting with a UPS investigator and HR representative, Plaintiff became agitated and panicked to the point the investigator told Plaintiff to seek medical attention. Plaintiff's family doctor diagnosed him with PTSD and told him he needed to file a workers' compensation claim.

- Plaintiff was placed on workers' compensation leave in November 2021, and subsequently disability leave. Other than a brief return to work in August 2022, Plaintiff remained on leave until UPS terminated his employment in September 2023.

- Plaintiff has received extensive treatment for the mental and emotional distress he suffered as a result of the sexual harassment he experienced at UPS.

- UPS investigated Plaintiff's report of sexual harassment and corroborated the kissing and physical touching incidents involving Cartwright.

- The UPS investigation also corroborated Apodaca's package scan and timecard falsification.

- Henry Apodaca's failures to report Plaintiff's claims of sexual harassment or to take corrective action were against written UPS policy.

- UPS never subjected Apodaca to any disciplinary action based on his failures to report Plaintiff's claims of sexual harassment or to take corrective action. However, UPS did terminate Apodaca for falsification of UPS business records.

## III.     LEGAL ANALYSIS

### A. UPS is Liable for Sexual Harassment Under the FEHA.

#### 1. Plaintiff Suffered Sexual Harassment That Was "Severe or Pervasive."

Sexual harassment "consists of any unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature. . . . "Hostile work environment" harassment has the purpose or effect of either interfering with the work performance of an employee, or creating an intimidating workplace. . . . Actionable sexual harassment must be sufficiently severe *or* pervasive to the point of creating an abusive environment that alters job

1    conditions . . . judged on both an objective and subjective basis." (*Rieger v. Arnold* (2002) 104

2    Cal.App.4th 451, 459.; emphasis added.)

3         A claim for hostile work environment sexual harassment may be supported by "[a] single

4    incident of harassing conduct" if that conduct "has unreasonably interfered with the plaintiff's

5    work performance or created an intimidating, hostile, or offensive working environment." (*Ortiz*

6    *v. Dameron Hospital Assn.* (2019) 37 Cal.App.5th 568, 582; citing Gov. Code § 12923(b) as

7    amended by the California Legislature in 2019.) In recognition of the Legislature's 2019

8    amendments to Gov. Code § 12923 (b), the California Supreme Court in *Bailey v. San Francisco*

9    *Dist. Attorney's Office* (2024) 16 Cal.5th 611, specifically disapproved decisions prior to the

10   2019 amendment to section 12923 that had rejected hostile work environment claims involving

11   only "occasional, isolated, sporadic, or trivial" harassment, or failing to show "a concerted

12   pattern of harassment of a repeated, routine or a generalized nature." (*Id.*at 626, fn.6, citing

13   *Aguilar v. Avis Rent A Car System, Inc*. (1999) 21 Cal.4th 121, 131.) "Under [amended] section

14   12923, *an isolated incident of harassing conduct need only have 'unreasonably interfered*

15   *with the plaintiff's work performance or created an intimidating, hostile, or offensive work*

16   *environment*.'" (*Wawrzenski v. United Airlines, Inc*. (2024) 106 Cal.App.5th 663, 699;

17   emphasis added; citing Gov. Code § 12923 (b).)

18        The evidence at trial will show Plaintiff experienced multiple instances of sexual

19   harassment by his co-worker that unreasonably interfered with his work performance and

20   created an "intimidating, hostile, or offensive" work environment—conduct that meets the

21   "severe or pervasive" standard under the FEHA.

### 2.  UPS is Liable for the Sexual Harassment Plaintiff Experienced.

23        UPS contends it can only be held liable for sexual harassment by a non-supervisor that it

24   subsequently ratified, and has proposed a jury instruction stating that "An employer is only

25   liable [for] sexual harassment committed by a nonsupervisory employee if, under the particular

26   circumstances of the case, the employer demonstrates an intent to adopt or approve the

27   oppressive, malicious, or wrongful behavior by an employee in the performance of his or her job

28   duties." Defendant's position is an incorrect statement of the law.

***FEHA imposes no requirement of ratification to establish employer liability for sexual harassment***—rather, the standard is whether a supervisor or agent knew or should have known of the harassment and failed to take immediate and appropriate corrective action. "Under FEHA, an employer is strictly liable for the harassing conduct of its agents and supervisors. . . . ***The standard for co-worker liability is that an employer is liable where it, its agents or supervisors knows or should have known of this conduct and fails to take immediate and appropriate corrective action***." (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 608, fn.6; emphasis added; internal citations and quotation marks omitted; *see also* Gov. Code § 12940(j): harassment is unlawful "if the entity, ***or its agents or supervisors***, ***knows or should have known of this conduct and fails to take immediate and appropriate corrective action***. . . . An entity shall take all reasonable steps to prevent harassment from occurring." (Emphasis added).)

The evidence at trial will show Plaintiff promptly reported Cartwright's harassment to his supervisor, Henry Apodaca, who failed to report it to his superiors or take any corrective action. The evidence will further show Apodaca's supervisor Ben Baker (as well as other agents of UPS) subsequently learned of the harassment, and likewise failed to take immediate and appropriate corrective action. This inaction by UPS's agents and supervisors—notwithstanding their duty to act under corporate policy and under the FEHA—satisfies the requirement for employer liability for sexual harassment.

### 3. The Harassment Was Objectively Offensive.

The "objectively offensive" prong of a hostile work environment is met if a reasonable person "in [plaintiff]'s circumstances would have considered the work environment to be hostile, intimidating, offensive, oppressive, or abusive." (CACI No. 2521A. Work Environment Harassment - Conduct Directed at Plaintiff.) Courts interpreting the FEHA (and Title VII from which FEHA is derived) have held this "reasonable person" standard is not based on a one-size-fits-all definition of reasonableness, but will necessarily vary based on the plaintiff's individual circumstances. (See *Lyle v. Warner Brothers Television Productions (*2006) 38 Cal.4th 264, 284, noting that that whether harassment is objectively offensive is based on the perception of "a

1   reasonable person in the plaintiff's position, ***considering all the circumstances***." (Emphasis

2   added.)

3          Defendant has attempted to oversimplify the "reasonable person" standard by focusing

4   solely on the fact that Plaintiff is male and Bonnie Cartwright is female, relying on the Ninth

5   Circuit's comment in *Ellison v. Brady* (9th Cir. 1991) 924 F.2d 872, 879 that "Men, who are

6   rarely victims of sexual assault, may view sexual conduct in a vacuum without a full

7   appreciation of the social setting or the underlying threat of violence that a woman may

8   perceive." However, *Ellison* also pointed that men as well as women may be victims of sexual

9   harassment (*Id*. at fn.11), and further, that the standard for what is reasonably considered

10  sexually harassing conduct may evolve over time. "As the views of reasonable women [and

11  men] change, so too does the Title VII standard of acceptable behavior." (*Id*. at fn.12.) In short,

12  *Ellison* in no way suggests that Plaintiff's perception of sexual harassment was unreasonable

13  because he was a man and Cartwright was a woman.

14         Moreover, in the 34 years since *Ellison* was decided, courts have further elaborated on

15  the "reasonable person" analysis, emphasizing it requires consideration of *all* the relevant

16  circumstances of the victim. In 1998, the U.S. Supreme Court stated:

17         We have emphasized . . . that ***the objective severity of harassment should be***
18         ***judged from the perspective of a reasonable person in the plaintiff's position,***
           ***considering "all the circumstances."*** . . . [T]hat inquiry requires careful
19         consideration of the social context in which particular behavior occurs and is
           experienced by its target. A professional football player's working environment is
20         not severely or pervasively abusive, for example, if the coach smacks him on the
           buttocks as he heads onto the field—***even if the same behavior would reasonably***
21         ***be experienced as abusive by the coach's secretary (male or female) back at the***
           ***office. The real social impact of workplace behavior often depends on a***
22         ***constellation of surrounding circumstances, expectations, and relationships***
23         ***which are not fully captured by a simple recitation of the words used or the***
           ***physical acts performed.*** Common sense, and an appropriate sensitivity to social
24         context, will enable courts and juries to distinguish between simple teasing or
25         roughhousing among members of the same sex, and conduct which a reasonable
26         person in the plaintiff's position would find severely hostile or abusive.

27  (*Oncale v. Sundowner Offshore Services, Inc.* (1998) 523 U.S. 75, 81–82; emphasis added; see
28

PLAINTIFF'S TRIAL BRIEF                                              Case No.: 23-CV-01899-AMO

1    also *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 462, applying *Oncale* standard

2    in the FEHA context and finding triable issue of fact whether workplace harassment was

3    objectively offensive, "[c]onsidering all the circumstances 'from the perspective of a reasonable

4    person in the plaintiff's position.'")

5        Conduct that has been found to be objectively offensive under the FEHA includes verbal

6    taunting of a male employee by co-workers who used sex "as a weapon to create a hostile work

7    environment." (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1236.)

8    Additionally, "there is no requirement that the motive behind the sexual harassment must be

9    sexual in nature. "[H]arassing conduct need not be motivated by sexual desire. . . . Sexual

10    harassment occurs when, as is alleged in this case, sex is used as a weapon to create a hostile

11    work environment." (*Singleton v. United States Gypsum Co*. (2006) 140 Cal.App.4th 1547,

12    1564, holding sexually explicit comments and threats against male employee were not "male-on-

13    male horseplay" and were objectively offensive.) *Singleton* further recognized that "generally,

14    physical touching is more offensive than unwelcome verbal abuse." (*Id*. at 1557, citing *Fisher v.

15    San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 609–610.)

16        Cartwright's sexually harassing conduct against Plaintiff was more severe than the verbal

17    taunting recognized as objectively offensive in *Taylor* and *Singleton*—consisting of repeated

18    unwelcome physical conduct by Cartwright including kissing, groping of Plaintiff's buttocks,

19    and other physical touching that Plaintiff did not invite and actively sought to avoid. In light of

20    "all the circumstances" of Plaintiff, including but not limited to Plaintiff's gender, background,

21    and standards of what was considered appropriate and inappropriate conduct at the UPS

22    warehouse where Plaintiff worked, the evidence will establish overwhelmingly that the sexual

23    harassment Plaintiff experienced was objectively offensive: any reasonable person in Plaintiff's

24    circumstances would have found Cartwright's uninvited and unwelcome kissing and other

25    physical conduct to be offensive and far outside the bounds of acceptable workplace behavior.

### 4.  The Harassment Was Subjectively Offensive.

27        In addition to being objectively offensive, a claim for hostile work environment sexual

28    harassment must also be subjectively offensive. (See *Taylor v. Nabors Drilling USA, LP* (2014)

7

222 Cal.App.4th 1228, 1241, finding trial court jury verdict form improperly failed to ask whether plaintiff actually found work environment hostile.) Here, Plaintiff has already testified under oath that he was in fact profoundly offended by Cartwright's sexual harassment, and the evidence Plaintiff offers at trial will be consistent with his prior testimony. Plaintiff is confident that the evidence at trial will demonstrate overwhelmingly that he was actually offended by the sexual harassment he endured from Bonnie Cartwright.

**B.  UPS Is Liable for Failure to Prevent Sexual Harassment under the FEHA.**

It is unlawful for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (Gov. Code § 12940 (k).) "The employer's duty to prevent harassment and discrimination is affirmative and mandatory. Prompt investigation of a discrimination [or harassment] claim is a necessary step by which an employer meets its obligation to ensure a discrimination-free work environment." (*Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.* (2002) 103 Cal.App.4th 1021, 1035; *see also* Gov. Code § 12940(j) imposing employer liability if the employer or supervisor, "knows or should have known" of harassing conduct "and fails to take immediate and appropriate corrective action.")

In *M.F. v. Pacific Pearl Hotel Management LLC* (2017) 16 Cal.App.5th 693, a hotel housekeeper was sexually assaulted by a trespasser who had previously harassed workers (including plaintiff). When the trespasser was seen re-entering the premises, the housekeeping manager initiated a partial search of the hotel buildings to check on employee safety, but nobody checked the floor where plaintiff was working, and she was violently sexually assaulted. The Court of Appeal held the manager's inadequate response was sufficient to sustain a claim for failure to prevent sexual harassment under FEHA:

> Once an employer is informed of the sexual harassment, the employer must take adequate remedial measures. The measures need to include immediate corrective action that is reasonably calculated to (1) end the current harassment and (2) to deter future harassment. [Citation.] ***The employer's obligation to take prompt corrective action requires (1) that temporary steps be taken to deal with the situation while the employer determines whether the complaint is justified and (2) that permanent remedial steps be implemented by the employer to prevent future harassment.***

8

1  (*M.F. v. Pacific Pearl Hotel Management LLC* (2017) 16 Cal.App.5th 693, 701; emphasis

2  added.)

3      Here the evidence will show beyond any dispute that Plaintiff advised his facility

4  manager, Henry Apodaca, of Bonnie Cartwright's harassment immediately after the first

5  incident occurred. This was sufficient to trigger a duty for UPS to take prompt corrective action

6  under Gov. Code § 12940(j) and (k). However, the evidence will show Apodoca failed to

7  discipline Cartwright or take any other appropriate corrective measures, but instead allowed

8  Cartrwright's harassment to continue over a period of approximately three months, in the face of

9  Plaintiff's repeated complaints. As was the case in *M.F. v. Pacific Pearl Hotel Management*

10 *LLC*, UPS is liable for Apodaca's failure to take prompt and effective steps to prevent further

11 harassment once Plaintiff reported the first incident.

12      **C.  UPS Is Liable for Intentional Infliction of Emotional Distress.**

13      In addition to his claims based on violations of the FEHA, Plaintiff has also alleged a

14 common-law claim for intentional infliction of emotional distress (IIED). A claim for IIED

15 requires the plaintiff to show outrageous conduct by the defendant that was either intended to

16 cause emotional distress to the plaintiff, or was done in reckless disregard of the probability that

17 the plaintiff would suffer emotional distress. (*See* CACI No. 1600: Intentional Infliction of

18 Emotional Distress.)

19      "[***B]y its very nature, sexual harassment in the work place is outrageous conduct as it***

20 ***exceeds all bounds of decency usually tolerated by a decent society***. Accordingly, if properly

21 pled, sexual harassment will constitute the outrageous behavior element of a cause of action for

22 intentional infliction of emotional distress." (*Fisher v. San Pedro Peninsula Hospital* (1989) 214

23 Cal.App.3d 590, 618; emphasis added.)

24      Plaintiff's claim for IIED based on his sexual harassment claims was properly pleaded

25 and the Court has found it was not subject to summary judgment.  The evidence at trial will

26 likewise support a finding by the jury that Cartwright's sexual harassment of Plaintiff, followed

27 by Henry Apodaca's and Ben Baker's failures to take corrective action when Plaintiff reported

28 Cartwright's harassment, was done in violation of Gov. Code § 12940(j) (failure to take

9

"immediate and appropriate corrective action" when employer's agent or supervisor knows or should have known of the harassment) as well as in violation of Gov. Code § 12950(k) (failure to take "all reasonable steps necessary to prevent discrimination and harassment from occurring.") Under *Fisher, supra*, these violation of the FEHA are sufficient as a matter of law for the jury to find outrageous conduct by agents and supervisors of UPS that will support a claim for IIED.

An employer will be responsible for intentional torts of its employees, including IIED, "if the agent commits the tort in the scope of his employment and in performing service on behalf of the principal" or alternatively, "if the principal ratifies its agent's conduct after the fact." (*Doe v. Roman Catholic Archbishop of Los Angeles* (2016) 247 Cal.App.4th 953, 969; internal quotation marks omitted.) The evidence here will demonstrate UPS is liable for its agents' outrageous failures to take immediate corrective action in response to sexual harassment reported by Plaintiff and to prevent additional harassment—in breach of their duties under company policy—because (1) UPS ratified its agents' conduct after the fact, and/or (2) their conduct was within the course and scope of their employment.

### 1. UPS Is Liable for IIED Based on Its Ratification of Henry Apodaca's Failure to Take Any Corrective Action in Response to Plaintiff's Complaints of Harassment.

Employer liability for intentional torts of an employee may be established by the employer's subsequent ratification of the employee's wrongful acts. (*See* CACI No. 3710: Ratification.) "[A]n employer may be liable for an employee's act where the employer either authorized the tortious act or subsequently ratified an originally unauthorized tort. . . . ***The failure to discharge an employee who has committed misconduct may be evidence of ratification***." (*Ventura v. ABM Industries Inc.* (2012) 212 Cal.App.4th 258, 272; emphasis added; see also *C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1112: claim of employer ratification supported by allegations that hospital knew of male employee's misconduct, took no disciplinary action, and allowed employee to be alone with female patients.) "Whether an employer has ratified an employee's conduct is generally a factual

question." (*Thomas v. Regents of University of California* (2023) 97 Cal.App.5th 587, 619: student athletes sufficiently pleaded university ratification of sexual harassment by soccer coach when it ignored complaints about coach's conduct.)

UPS PMK Franklin Harris has confirmed that UPS's own investigation substantiated Plaintiff's claims that he reported Cartwright's sexual harassment to his supervisor Henry Apodaca, that the incidents Plaintiff reported in fact occurred, and that Apodaca violated UPS policy by failing to report the harassment and failing to take any corrective action to stop the ongoing harassment. Apodaca's failure to take immediate corrective action led to further harassment of Plaintiff by Cartwright.

Importantly, ***neither Apodaca's supervisor Ben Baker nor anyone else at UPS ever disciplined Apodaca for these egregious violations of company sexual harassment policy which also constituted violations of the FEHA.*** Instead, Apodaca was terminated for falsifying package scans and timecards. These facts will support a finding by the jury that UPS ratified the conduct of Apodaca, Baker, and other agents of UPS who failed to take immediate corrective action in response to Plaintiff's reports of sexual harassment.

### 2. UPS Is Also Liable for IIED Because Henry Apodaca Was Acting in the Course and Scope of His Employment When He Failed to Report Cartwright's Harassment and Failed to Take Corrective Action.

Intentional torts committed in the course and scope of employment can include unauthorized conduct "committed in a series of acts authorized by the employer" or that "arose from a risk inherent or created by the enterprise. An employee's wrongful or criminal conduct may be within the scope of employment ***even if it breaks a company rule or does not benefit the employer.***" (CACI No. 3722. Scope of Employment – Unauthorized Acts; emphasis added.)

"Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 213.) Conduct can be within the course and scope of employment even if it violates company policy:: "An employee's willful, malicious, and even criminal torts may fall within the scope of his or her employment, ***even though the employer did not authorize the employee to commit***

PLAINTIFF'S TRIAL BRIEF                                                                    Case No.: 23-CV-01899-AMO

1  ***crimes or intentional torts***." (*Crouch v. Trinity Christian Center of Santa Ana, Inc*. (2019) 39

2  Cal.App.5th 995, 1015, holding evidence was sufficient for jury to find nonprofit director was

3  acting within course and scope of her employment when she berated and blamed employee who

4  reported rape by co-worker, establishing employer liability for IIED.)

5      UPS argues that the employee conduct upon which Plaintiff bases his claim for IIED was

6  outside the "course and scope" of employment. However, the evidence will show Henry

7  Apodaca's failure to take corrective action in response to Plaintiff's sexual harassment

8  complaint was directly related to his duties as Plaintiff's supervisor and Oakland facility

9  manager. According to Defendant's PMK Franklin Harris, UPS policy required Apodaca to

10  report Plaintiff's complaints of sexual harassment and take appropriate corrective action,

11  including disciplining Plaintiff's harasser. Likewise, Ben Baker was acting within the course and

12  scope of his employment when he failed to discipline Apodaca for his breaches of UPS's anti-

13  harassment policy. This evidence will support a finding by the jury that although Apodaca and

14  Baker acted contrary to UPS policy, their violations of policy were done in their capacity as UPS

15  agents and supervisors who were responsible for receiving sexual harassment complaints and

16  acting on them appropriately (including reporting the harassment and imposing disciplinary

17  measures), and that these violations "arose from a risk inherent or created by the enterprise."

18  (*See* CACI No. 3722, *supra.*)

19          **IV.    DAMAGES**

20      **A.  Plaintiff's Non-Economic Damages.**

21      The most significant element of Plaintiff's damages in this case is non-economic, based

22  on the severe mental and emotional distress Plaintiff incurred as a result of the sexual

23  harassment he experienced at UPS, UPS's failure to prevent that harassment, and the extreme

24  and outrageous conduct of Plaintiff's supervisor in refusing to take any corrective action in

25  response to his complaints. Plaintiff's testimony, as well as the testimony of his spouse, treating

26  providers, and retained expert witness Jessica Rowe, Psy.D., will substantiate that he in fact

27  suffered substantial mental and emotional distress from Bonnie Cartwright's sexual harassment,

28

PLAINTIFF'S TRIAL BRIEF                                    Case No.: 23-CV-01899-AMO

which was only exacerbated when he reported the harassment to his manager who refused to take any corrective action to stop it.

### 1. UPS Failed to Timely Designate Experts to Rebut Dr. Rowe's Opinion Testimony.

On April 18, 2024, in compliance with the Court's operative order, Plaintiff timely disclosed the retained and non-retained experts he intended to call at trial, and served the expert witness report of his designated expert, Dr. Jessica Rowe, Psy.D. UPS did not designate any expert witnesses of its own, disclosed no subsequent rebuttal experts, and elected not to take Dr. Rowe's deposition.

Based on its failure to comply with the Court's scheduling requirements, UPS is precluded under Fed. R. Civ. P. 37(c)(1) from offering any opinion testimony, including opinions of Plaintiff's treating physicians that are properly expert opinions rather than lay opinions. Fed. R. Evid. 701, while permitting lay opinion testimony "rationally based on the witness's perception" and "helpful to clearly understanding the witness's testimony or to determining a fact in issue", may not be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Any opinion based on a witness's training or professional experience would constitute expert opinion testimony that must be timely disclosed under Fed. R. Evid. 26(a)(2) and must also qualify as expert testimony under Rule 702. (See *U.S. v. Figueroa-Lopez* (9th Cir. 1997) 125 F.3d 1241, 1246, holding law enforcement agent testimony that suspect behavior was consistent with drug trafficking was improperly admitted as lay opinion testimony, and was properly expert opinion subject to the vetting requirements of Rule 702.)

For all of these reasons, any opinion testimony UPS elicit from so-called percipient witnesses, including Plaintiff's treating providers, may not include unqualified quasi-opinion testimony based on their "scientific, technical, or other specialized knowledge" for the purpose of rebutting Plaintiff's timely disclosed expert opinion testimony.

### 2. UPS Cannot Isolate or Exclude Elements of Plaintiff's Experience in a Ploy to Reduce Damages.

Defendant raises several defenses to Plaintiff's claims for damages, including arguing that Plaintiff suffered no damages (*see* parties' Jul. 30, 2025 Proposed Final Pretrial Order at p.

13

2:11-12); that any alleged damages were not caused by UPS (*Id*. at p. 2:14); and that any damages were the result of supervening, intervening, and/or superseding causes. (*Id*. at p. 2.15-16.)

UPS hopes to show Plaintiff was not actually damaged by the conduct he complains of, or that his damages should be reduced, by separating his allegations of misconduct by Cartwright and Apodaca into facts so detached from the context of the events in which they occurred, UPS hopes the jury does not see these isolated facts as "severe or pervasive," objectively offensive, or subjectively offensive. For example, UPS has repeatedly sought to downplay Cartwright's actions as a single peck on the cheek, a deflected kiss, and three incidents of "physical touching," ignoring Plaintiff's detailed explanations of these events, the circumstances in which they took place, how they affected him, and why they caused him such distress.

### 3. UPS Cannot Exclude Evidence Relevant to the Jury's Assessment of Plaintiff's Damages.

UPS also seeks to exclude evidence of "unrelated" misconduct by Apodaca including his repeated attempts to force Plaintiff to falsify package scans and timecards, alleging it is irrelevant to Plaintiff's sexual harassment claims. (*See* Defendant's Motion *In Limine* No. 5.) Notwithstanding Defendant's attempts to characterize this conduct as irrelevant, this evidence is highly probative to the jury's analysis of Plaintiff's damages: Plaintiff has testified consistently that Apodaca began insisting Plaintiff falsify these records at or about the time Plaintiff first reported Cartwright's harassment to Apodaca. The jury is entitled to weigh how this conduct by Apodaca contributed to Plaintiff's non-economic damages, and does not need to be premised on an actionable retaliation claim. Moreover, UPS may argue these incidents support an alternative stressors defense that should reduce, rather than enhance, Plaintiff's damages. In either case, evidence that Apodaca directed Plaintiff to falsify package scans and timecards is relevant and must be admitted so the jury may weigh it in the context of the parties' claims and defenses.

UPS also seeks to exclude evidence relating to Plaintiff's dismissed claims of retaliation and wrongful termination in violation of public policy. (*See* Defendant's Motion *In Limine* No.

2.) As with Apodaca's misconduct, evidence relating to Plaintiff's termination is relevant to the jury's damages analysis. Plaintiff discussed his termination and perceived retaliation by UPS with Jessica Rowe, Psy.D., Plaintiff's designated expert. Dr. Rowe concluded in her April 18, 2024 expert witness report that Plaintiff's termination and perception that UPS retaliated against him were factors in her conclusion that Plaintiff suffered psychological harm from his experiences at UPS. The jury must weigh these potential alternative stressors and decide whether, and to what extent, they impact Plaintiff's claims for damages attributable to his operative claims for FEHA sexual harassment, failure to prevent harassment, and IIED.

Defendant is correct that Plaintiff's now-dismissed claims of retaliation and wrongful termination no longer form a basis for a potential finding of liability by the jury. However, that does not render all evidence relating to those former claims irrelevant or inadmissible, and the Court may issue appropriate limiting instructions to the jury to avoid any potential for unfair prejudice based on that evidence.

### 4. UPS Cannot Prevail on its Avoidable Consequences Defense.

UPS has also raised avoidable consequences as an affirmative defense, contending Plaintiff failed to take advantage of preventive or corrective measures to mitigate his damages after Cartwright's sexual harassment occurred. (*See* parties' Jul. 30, 2025 Proposed Final Pretrial Order at p. 2:12-14.) UPS is unlikely to prevail on this defense at trial.

The avoidable consequences doctrine allows an employer to argue in a sexual harassment case that a plaintiff's damages (but not the employer's liability) should be reduced to the extent the plaintiff unreasonably failed to take advantage of preventive and corrective measures provided by the employer. However, "an employee's failure to report a supervisor's harassment to management, by itself, is insufficient to establish an avoidable consequences defense. To establish the defense, the employer must also show that the employee's failure to report the harassment was unreasonable under the circumstances and that, more likely than not, using the employer-provided internal remedies would have prevented at least some of the employee's claimed damages from occurring." (*State Dept. of Health Services v. Superior Court*

1    (2003) 31 Cal.4th 1026, 1046.) The standard of reasonableness required of the employee "*is not*
2    *as high as the standard required in other areas of law.*" (*Id*. at 1045; emphasis added.)

3          Plaintiff anticipates Defendant will argue it was unreasonable that Plaintiff, who first
4    encountered sexual harassment from Bonnie Cartright in April 2021, did not call the UPS
5    Ethics Hotline until September. Plaintiff believes any such argument is outweighed by the
6    admission of Defendant's PMK that Plaintiff reported the harassment to his manager Henry
7    Apodaca as soon as it occurred, in compliance with UPS policy.

8          The jury may of course draw whatever conclusions it believes appropriate from the
9    evidence, but Plaintiff believes Defendant is unlikely to prevail on any argument that Plaintiff
10   failed to act reasonably to limit his damages.

11        **B.  Plaintiff's Economic Damages.**

12         In addition to his considerable non-economic damages, Plaintiff also alleges economic
13   damages based on lost income and benefits up the time of his termination, as well as a claim for
14   lost earning capacity as a long-term consequence of the sexual harassment he was subjected to
15   at UPS.

16         UPS asserts that any economic damages Plaintiff recovers are subject to offset based on
17   wages, workers' compensation, or other compensation he received while on leave. (*See* parties'
18   Jul. 30, 2025 Proposed Final Pretrial Order at p. 2:16-17.) Plaintiff does not dispute the
19   possibility that some of these payments (such as employer-funded disability payments) may be
20   subject to offset. However, workers' compensation benefits, even in employee actions against
21   the employer, are subject to the collateral source rule and would not supply a basis for offset.
22   "California cases find that 'employment-related payments may not be used to reduce a
23   plaintiff's damage award.' . . . The Court finds that based upon the review of the case law, the
24   California Supreme Court would hold that workers' compensation benefits are not a source
25   wholly independent because the employee has constructively paid for the benefits through his
26   labor. Therefore, the collateral source rule would apply to workers' compensation payments."
27   (See *Garcia v. Praxair, Inc.* (E.D. Cal., Jan. 5, 2021, No. 1:18-CV-01493-SAB) 2021 WL
28   38183, at *17; citing *Pacific Gas & Electric Co. v. Superior Court* (1994) 28 Cal.App.4th 174,

Content: