UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CYRUS MOFRAD,
Plaintiff,
v.
UNITED PARCEL SERVICE, INC.,
Defendant.

Case No. 23-cv-01899-AMO

**ORDER RE PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**

Re: Dkt. Nos. 178, 179

Before the Court is Plaintiff Cyrus Mofrad's motion for an award of attorney's fees. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for November 5, 2026, is VACATED. *See* Civil L.R. 7-1(b), Fed. R. Civ. Pro. 78(b). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court **GRANTS** the motion for the following reasons.

## I. BACKGROUND

Mofrad filed his complaint in Alameda County Superior Court on March 21, 2023, alleging claims of (1) sexual harassment under California's Fair Employment and Housing Act ("FEHA"), (2) failure to prevent sexual harassment, (3) retaliation, (4) failure to accommodate and engage in interactive process, and (5) intentional infliction of emotional distress arising out of the sexual harassment. *See* Dkt. No. 1. On April 20, 2023, Defendant United Parcel Service, Inc. ("UPS") removed the case to federal court. *Id.*

The litigation proceeded in two distinct phases. The first phase concerned Mofrad's original claims based on sexual harassment suffered during his tenure of employment with UPS. Fact discovery on those claims closed on March 21, 2024. Dkt. No. 39. The Court denied

United States District Court
Northern District of California

United States District Court
Northern District of California

Mofrad's request to extend discovery on the original claims, finding no good cause to modify the scheduling order. Dkt. No. 39 at 2.

The second phase began when Mofrad sought leave to amend the complaint to add termination-based claims. Dkt. Nos. 34, 37. On April 5, 2024, Mofrad filed a First Amended Complaint ("FAC") alleging four additional causes of action, including: (6) an additional claim for retaliation, (7) an additional claim for failure to accommodate and engage in interactive process, (8) wrongful termination based on FEHA violations, and (9) wrongful termination based on violations of the Americans with Disabilities Act ("ADA"). Dkt. No. 41. The Court permitted only limited additional discovery on those new claims and set a fact discovery cutoff of September 20, 2024. Dkt. No. 39 at 2. Mofrad thereafter filed a motion seeking to compel a deposition relating to the first set of claims after the discovery deadline had passed. Dkt. No. 40. The Court denied that request as untimely. Dkt. No. 45.

In December 2024, the Court granted UPS's motion for summary judgment, dismissing all termination-based claims and several original claims. Dkt. Nos. 102, 116. Only three claims remained for trial: sexual harassment, failure to prevent sexual harassment, and intentional infliction of emotional distress to the extent that claim rested on the alleged sexual harassment. *Id.*

At the pretrial stage, Plaintiff's counsel filed several unnecessary and unsuccessful pretrial motions. Most notably, Plaintiff's counsel filed motions in limine ("MIL") numbers 2 and 3, seeking relief on issues to which UPS had already stipulated. Dkt. No. 108 at 8, Dkt. No. 109 at 8, 141. In addition, despite repeated requests from UPS's counsel to meet and confer regarding joint jury instructions, Plaintiff's counsel failed to respond and timely file them, requiring UPS to submit its own filing after the submission deadline. Bowman Decl. ¶ 4; Declaration of Abraham Rejwan ("Rejwan Decl."), Exs. D-F (Parties' counsel's meet-and-confer emails).

The case ultimately settled and did not proceed to trial.

## II. DISCUSSION

The "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560

U.S. 242, 252-53 (2010) (quotation marks and citations omitted). Varying from that principle, the California Fair Employment and Housing Act ("FEHA") gives the court discretion to award fees and costs to "the prevailing party." Cal. Gov't Code § 12965(c)(6). To decide which party is the "prevailing" party, the court analyzes "the extent to which each party has realized its litigation objectives." *Bustos v. Glob. P.E.T., Inc.*, 19 Cal. App. 5th 558, 562-63 (2017) (quoting *Castro v. Superior Court*, 116 Cal. App. 4th 1010, 1023 (2004)). Here, there is no dispute that Mofrad is the prevailing party and that Plaintiff's counsel is entitled to recover reasonable attorney's fees – the dispute rests in the appropriate calculation of those fees. *See* Dkt. No. 183 at 10 (UPS acknowledging that "Plaintiff Cyrus Mofrad is entitled to recover reasonable fees incurred to litigate the three harassment-based claims that he settled," but not fees for the six disability, retaliation, and retaliation claims dismissed by the Court at summary judgment).

"Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees." *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). The state law governing a claim "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Federal and California courts utilize the lodestar method for calculating the amount of reasonable attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000); *see also Vines v. O'Reilly Auto Enters., LLC*, 74 Cal. App. 5th 174, 182 (2022) ("In order to calculate an attorney fee award under the FEHA, courts generally use the well-established lodestar method."). "[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). The Court elects to take up the element of reasonable hours expended first and then assesses the reasonable hourly rates before crunching the numbers.

### A. Reasonable Hours

The party moving for attorney's fees bears the burden of providing the Court with a detailed account of the hours spent litigating the case. *Hensley*, 461 U.S. at 433. Courts may exclude any hours not reasonably expended for being "excessive, redundant, or otherwise unnecessary." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000)

(quoting *Hensley*, 461 U.S. at 434); *see also Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (noting that the requested hours "may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary."). At the same time, the Supreme Court has instructed:

> [T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox v. Vice*, 563 U.S. 826, 838 (2011). Consistent with this balanced approach and with an eye towards eliminating inefficiencies, the Court may use its discretion to give the fee award a 10% "haircut" across the board "without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

**1. Hours Expended on Unsuccessful Claims**

The California Supreme Court recognizes that, "when determining a prevailing plaintiff's attorney fee in an action for violation of civil rights, the extent of a plaintiff's success is a crucial factor. If a plaintiff has prevailed on some claims but not others, fees are not awarded for time spent litigating claims unrelated to the successful claims, and the trial court should award only that amount of fees that is reasonable in relation to the results obtained." *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010) (internal citations & quotation marks omitted). "Once a district court concludes that a plaintiff has pursued unsuccessful claims that are unrelated to the successful claim, its task is to exclude from the calculation of a reasonable fee all hours spent litigating the unsuccessful claims." *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 904 (9th Cir. 1995). "If 'a plaintiff . . . present[s] in one lawsuit distinctly different claims for relief that are based on different facts and legal theories,' 'counsel's work on one claim will be unrelated to his work on another claim'; 'these unrelated claims [must] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.' " *Vines*, 74 Cal. App. 5th at 183 (quoting *Hensley*, 461 U.S. at 434-35). Indeed, "California law is consistent with federal law" such that, "[i]f a plaintiff has prevailed on some

claims but not others, fees are not awarded for time spent litigating claims unrelated to the successful claims, and the trial court 'should award only that amount of fees that is reasonable in relation to the results obtained.' " *Chavez*, 47 Cal. 4th at 989 (quoting *Hensley*, 461 U.S. at 440). Even where successful and unsuccessful claims are interrelated, a fee award should be reduced when, as here, the plaintiff achieves limited success. *Vines*, 74 Cal. App. 5th at 183 (quoting *Hensley*, 461 U.S. at 436) (limited success can make a full lodestar "excessive").

Here, UPS argues that Plaintiff's counsel's requested fees for claims dismissed at summary judgment should be excluded from the amount to be awarded. *See* Dkt. No. 183 at 11-13. The Court agrees. UPS prevailed on several of the causes of action at the summary judgment stage, including two claims for retaliation, two claims for disability discrimination based on failure to accommodate, and two claims for wrongful termination in violation of public policy. *See* Dkt. No. 102 (order granting in part and denying in part Defendant's motion for summary judgment); *see also* Dkt. No. 116 (clarifying dismissal of eighth cause of action for wrongful termination in violation of public policy). The only three claims that remained of the nine alleged in the operative complaint were (1) the first cause of action for sexual harassment, (2) the second cause of action for failure to prevent sexual harassment, and (3) the fifth cause of action for intentional infliction of emotional distress to the extent that claim rested on the occurrence of sexual harassment. *Id.* Plaintiff's counsel insists that the claims dismissed at summary judgment were linked with his claims of sexual harassment. *See* Dkt. No. 178 at 21. Not so. The dismissed claims were not factually nor legally interrelated with those which survived at summary judgment. Plaintiff's counsel provides no meaningful connection between, on the one hand, his claims of sexual harassment and, on the other hand, those failed claims of disability discrimination and wrongful termination beyond the fact that the claims arose from the same tenure of employment. Indeed, the Court found Mofrad's assertions of adverse employment actions untethered to the sexual harassment, which is why his claims of retaliation and termination in violation of public policy failed. *See* Dkt. No. 102 at 12-13, 16. The disability discrimination claims were even more attenuated from the surviving sexual harassment claims given that they involved different theories of damages and different, discrete discovery periods. *See* Dkt. Nos. 2, 41, 55. The Court finds

that the dismissed claims did not contribute to "the overall relief obtained," and therefore, Plaintiff's counsel may not recover for the hours devoted to those unsuccessful claims. *Hensley*, 461 U.S. at 435.

Despite these heavy losses on the merits, Plaintiff's counsel makes no effort to segregate the time entries by claim. *See* Dkt. No. 178-6. The billing records, which can only be described as a data dump, remain so vague and generalized that they provide no meaningful way in which to cut out the hours devoted to losing claims. *Id.* Indeed, the records do not include any discerning details that would allow for meaningful review, with entries including 18.8 hours for "Drafted Opposition to Defendant's Motion for Summary Judgment," and 7.1 hours for "Reviewed and edited Motion for Summary Judgment Opposition." *Id.* at 26. The Court discusses the problem of block billing below, but for purposes of assessing the hours expended on unsuccessful claims, the records provide no help. And despite UPS's arguments regarding the necessity to exclude such hours, Plaintiff's counsel offers no path to do so, insisting instead that "a court is not required to reduce the lodestar at all for unsuccessful claims." Dkt. No. 186 at 7. Plaintiff's counsel insisted on this course even after the Court struck the original motion for attorney's fees and instructed counsel that attorney's fees would not be awarded for time devoted to unsuccessful claims. *See* Dkt. No. 167. These considerations weigh significantly in the reductions of the lodestar discussed below.

Plaintiff's counsel claims that he reduced the request for attorney's fees to account for his unsuccessful claims following the Court's admonishment that he would not receive attorney's fees for time devoted to the claims dismissed at summary judgment. *See* Dkt. No. 178 at 22-23. UPS argues that these purported reductions are inadequately documented. Dkt. No. 187 at 18. The Court agrees. Plaintiff's counsel fails to explain which time entries were removed from the lodestar calculation in the process of this reduction. Counsel instead offers vague contentions about the amount of time devoted to successful claims and a reduction of approximately 30% for

the time spent drafting the opposition to UPS's motion for summary judgment.[1] *See* Dkt. No. 178 at 22-23. Such vague, perfunctory reductions to the time devoted to a single brief does not demonstrate any meaningful effort to appropriately reduce the fee demand in light of the Court's instructions. *See* Dkt. No. 167. This defect serves as a symptom of a larger problem. Plaintiff's counsel's billing records remain too vague to aid in assessing what time can be attributed to what claim. This weighs in favor of a further reduction of the lodestar based on the failure to provide reliable time records. *See Chalmers*, 796 F.2d at 1210 (noting that the hours "may be reduced by the court where documentation of the hours is inadequate").

**2. Time Entries for Incomplete, Unsuccessful, or Unnecessary Work**

UPS advances several additional challenges to Mofrad's motion for an attorney's fees, and several of them can most readily be construed as challenges to records for incomplete, unsuccessful, or unnecessary work. *See* Dkt. No. 187 at 17-21. The Court briefly addresses these arguments.

UPS challenges several time entries reflecting work that either did not occur or did not end up on the record. *See* Dkt. No. 187 at 19. Courts routinely exclude fees for work that generated no practical litigation benefit. *See Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 974 (N.D. Cal. 2014) (removing fees for time spent drafting motion that was not filed). Citing to the time records, UPS identifies,

> • On March 13, 2024, Counsel billed to draft a joint stipulation for an informal discovery conference that was never filed. *See* Dkt. (no stipulation filed later in March 2024).
> • On September 2, 2025, while the Parties were preparing pretrial filings, Counsel apparently billed for "Review[ing] procedural requirements for continuing Fee Motion Deadline Due to Unresolved Settlement Agreement" when no settlement discussions had occurred and no fee motion had been discussed.
> • On September 10, 2025, Counsel billed 5.1 hours ($5,100) to "Draft[] Motion for Leave to file Trial Brief After Expiration of Deadline" even though the trial brief had already been filed days earlier, on September 5, 2025. Dkt. 137.

---

[1] Based on the Court's review of the record, including Mofrad's brief in opposition to summary judgment, an arbitrary reduction of 30% to account for the dismissed claims is nonsensical and should have been much greater. Moreover, such a paltry reduction for the time devoted to a single brief falls out of proportion with the scope of the claims on which Mofrad lost in the case overall.

> • On September 14, 2025, Counsel billed 5.1 hours ($3,570) to "Attended session 2 of court-ordered settlement conference" when no session occurred then. Dkt. 145.
> • On January 9, 2026, Counsel billed time to "Coordinate with Drew re: oral argument issues opposing Defendants' Motion to Stay" even though UPS never filed such motion and no such oral argument existed.

Dkt. No. 187 at 19 (footnotes omitted).

Relatedly, UPS argues that it "should not bear the cost of work that was unsuccessful, unnecessary, duplicative, or incurred solely as a consequence of Counsel's own litigation decisions." Dkt. No. 187 at 14. On that point, UPS points out several additional time entries reflecting defective, duplicative, or stricken work, including:

> • Pretrial filings. Counsel billed nearly 40 hours for pretrial filings the Court directed him to redo because he failed to meet and confer and comply with applicable deadlines. Bowman Decl. ¶ 4; Ex. B at 74:9-75:5, 77:1-7; Exs. D-F (Parties' counsel's meet-and-confer emails).
> • Trial brief. Counsel seeks $40,000 for a trial brief the Court struck as untimely. Ex. B at 75:3-5 ("I'm not considering it. Your trial brief was tardy. It's not under submission. It isn't properly filed. It's out of time.").
> • Original fee motion. Counsel seeks $55,000 for his original fee motion the Court struck because he (again) failed to meet and confer. Bowman Decl. ¶ 12; *see also* Dkt. 167.
> • Amended fee motion. Counsel seeks roughly $40,000 for work leading up to the amended motion, which could have been avoided had Counsel complied with basic meet-and-confer obligations in the first instance.

Dkt. No. 187 at 14 (footnotes omitted).

Pressing further still, UPS argues that Mofrad improperly seeks fees for pointless work – "for efforts that yielded no compensable result." Dkt. No. 187 at 14-15. UPS identifies more exemplar time entries:

> For example, Counsel seeks fees for motions to compel written discovery and related efforts that were withdrawn or mooted by stipulation. Dkt. 54. Counsel also seeks fees for Plaintiff's MIL No. 312 seeking to exclude a defense that UPS repeatedly represented it did not intend to assert. Dkt. 109 at 8.

Dkt. No. 187 at 15 (footnotes omitted).

In response to UPS's arguments regarding the attempt to bill for incomplete work, Plaintiff's counsel offers no meaningful dispute and instead insists that the work took place even



United States District Court
Northern District of California

though it did not show up on the docket. Dkt. No. 186 at 9. As for UPS's assertions regarding unsuccessful and/or unnecessary billing entries, Plaintiff's counsel offers no separate argument, resting on the argument that "a court is not required to reduce the lodestar at all for unsuccessful claims." Dkt. No. 186 at 7.

The Court agrees with UPS. Plaintiff's counsel includes substantial examples of work that was incomplete, unsuccessful, or wholly unnecessary. The Court declines to compensate counsel for such work because it did not aid in proving the limited claims on which Mofrad prevailed. *See Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 224 (9th Cir. 2013). But given the defects in the documentation from Plaintiff's counsel, including billing records that lack detail and remain otherwise untrustworthy, the Court cannot readily discern which time entries require omission from the lodestar calculation. *See also Fox*, 563 U.S. at 838 ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants."). In the calculation below, the Court will impose a percentage reduction of the lodestar based on these categories of deficiencies.

**3. Block Billing**

UPS additionally attacks Plaintiff's counsel's billing records as untrustworthy because of their inclusion of block billing entries. *See* Dkt. No. 187 at 20. A timekeeper block bills when he or she "enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (citing *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996)) (internal quotation marks omitted). Courts may reduce fee awards for billing records when the moving party block bills, as "[t]here is no way to determine whether the time claimed for any particular task is reasonable because [the moving party] did not identify the fees or time associated with these tasks individually." *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 968 (N.D. Cal. 2014). District courts in the Ninth Circuit have the authority to apply a blanket discount to block-billed entries. *Welch*, 480 F.3d at 948; *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1223-23 (9th Cir. 2010). In *Welch*, the Ninth Circuit affirmed a district court's authority to reduce block-billed hours by 10-30%. *Id.*, 480 F.3d at 948; *see also Banas*, 47 F. Supp. 3d at 968 (reducing block-billings by 20%).

Here, Plaintiff's counsel's time records reveal some block billing, particularly for lengthy time entries that do not identify the time devoted to specific tasks or subjects to allow review for reasonableness. UPS points to several time entries vaguely referring to preparation of deposition notices, *see, e.g.*, Dkt. No. 178-6 at 12 (4.9 hours on 3/5/24), as well as time entries for "Review[] and edit[] Plaintiff's Motions in Limine 1-3," *id.* at 36 (1.7 hours on 8/6/25). These entries indeed reflect block billing, but the Court cannot readily parse through all the entries reflecting block billing in the 46-pages of Plaintiff's counsel's time records. The Court declines to impose a separate discount for block billing in the absence of a more detailed, line-by-line assessment. Instead, the Court finds that the block billing reflected in the record leaves the record less reliable for purposes of the Court's overall assessment. *Cf. Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.").

**4. Overstaffing**

UPS argues that Plaintiff's counsel's billing records reveal excessive hours to the point of inefficiency. *See* Dkt. No. 187 at 16. The Court may reduce the hours expended "if the case was overstaffed and hours are duplicated" or "if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers*, 796 F.2d at 1205. UPS insists Plaintiff's counsel recorded unnecessary, duplicative, and excessive hours. Dkt. No. 187 at 16-17. This argument is well taken. Because Plaintiff's counsel seeks high hourly rates to compensate for their years of experience, the Court expects efficiency that corresponded with fewer hours devoted to a given task. *See, e.g.*, Dkt. No. 187 at 16-17 (collecting citations to billing record showing Schnebly, attorney with 20 years of experience, billing over 30 hours on a settlement conference statement, nearly 40 hours on routine expert disclosures, over 20 hours for an opposition to a motion in limine, nearly 12 hours on a joint exhibit list, nearly three hours on a less-than-one-page opposition to an administrative motion, and nearly 17 hours on deposition notices for one corporate and three fact witnesses). However, the Court declines to reduce the lodestar on this basis for two reasons. First, the Court finds that the other, substantial discounts imposed in this order mitigate at least some of the excessive hours included among Plaintiff's counsel's billing records. Second, the Court heeds the

Ninth Circuit's guidance that it "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno*, 534 F.3d at 1112.

**5. Reasonable Hour Conclusion**

In sum, the Court finds Plaintiff's counsel's claimed hours unreasonable. Plaintiff's counsel's time records evidence that they failed to appropriately reduce the hours for which they seek compensation to reflect Mofrad's loss of two-thirds of his claims at summary judgment. He did not prevail on these claims, and Plaintiff's counsel is not entitled to recover for attorney's time devoted to them, particularly where those claims are not intertwined with the claims that were set to proceed to trial. Plaintiff's counsel makes the process of accurately discounting their hours unnecessarily onerous because they fail to provide any reasonable way to calculate the reduction, instead insisting in all-or-nothing fashion that counsel is entitled to the full amount requested. *See* Dkt. No. 186 at 4-5. A reduction of the hour total by two-thirds to account for Mofrad's limited success would be proportional, but the Court recognizes that at least some of the work completed cuts across both successful and unsuccessful claims and may remain compensable. The Court accordingly reduces the hour total by 50% for the lodestar calculation for the unsuccessful claims. The Court further reduces the hour total by a further 10% to account for counsel's unreliable records that include block billing and time entries for incomplete, unsuccessful, and unnecessary work.

**B. Reasonable Rates**

"[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015) (internal quotation marks omitted); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) ("prevailing market rate" is "normally deemed to be reasonable"). "[T]he relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "Affidavits of the [fee applicant's] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly



United States District Court
Northern District of California

those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (citation omitted).

"From 2019 to 2022, courts in this District typically awarded rates between $350 and $475 to prevailing civil rights attorneys." *Johnson v. City of Santa Rosa*, No. 23-CV-02478-JSC, 2026 WL 1257369, at *3 (N.D. Cal. May 7, 2026) (collecting cases and awarding rates of $440 and $465 to attorneys with over ten years of experience each). "Courts in this District sometimes fix hourly rates above this range when presented with evidence justifying such an award, such as an attorney having an exceptional amount of experience." *Id.* at *3 (citing, e.g., *Dominguez v. City of San Jose*, No. 18-CV-04826-BLF, 2023 WL 2717266, at *6 (N.D. Cal. Mar. 29, 2023)). For example, in *Dominguez*, the Court awarded an hourly rate of $650 for a civil rights attorney with over 40 years of experience and $500 for civil rights attorney with 20 years of experience. *Id.*, 2023 WL 2717266, at *6. In calculating a reasonable hourly rate for a civil rights attorney, courts consider "the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases." *Moreno*, 534 F.3d at 1114.

Here, Plaintiff's counsel seeks hourly rates of $500 per hour for attorney Jessica Hart, who has six years of experience, $700 per hour for attorney Drew Lewis, who has 10 years of experience, and $1000 per hour for Daniel Schnebly, who has 22 years of experience. Lewis Decl. (Dkt. No. 178-4) ¶ 41. Plaintiff's counsel avers that these hourly rates are reasonable in comparison to rates recently approved by the Court in another context. Dkt. No. 178 at 5 (citing *Garretson Resol. Grp., Inc. v. Bolla*, No. 25-CV-02836-AMO, 2026 WL 1531739 (N.D. Cal. June 1, 2026)). Plaintiff's counsel additionally cites the Laffey Matrix, a survey of rates approved in the Washington/Baltimore legal market. Dkt. No. 178 at 17. Further, Plaintiff's counsel submits declarations from seasoned class action litigators attesting to the reasonableness of the rates sought by counsel here. *See* Vinick Decl. (Dkt. No. 178-1); Organ Decl. (Dkt. No. 178-2).

The cases and attorneys relied upon by Plaintiff's counsel fail to persuade that the attorneys in this case are entitled to the requested rates. In particular, the Court finds that

counsel's experience and the quality of their representation does not merit deviation above the rates awarded in other civil rights cases. *Cf. Johnson*, 2026 WL 1257369, at *3; *Dominguez*, 2023 WL 2717266, at *6. To begin, notwithstanding the serious alleged harm to Plaintiff from the underlying sexual harassment and the importance of vindicating his rights, this case was not legally or factually complex. In contrast to several of the cases cited by Plaintiff, including *Bolla*, Plaintiff's counsel did not demonstrate a particularly high level of skill in prosecuting the case. Much of the case's procedural complexity, rather, arose from Plaintiff's counsel's lack of diligence, such as the delays identified in the Court's order modifying the scheduling order, Dkt. No. 39, and the Court's order denying the tardy motion to compel the deposition of witness Henry Apodaca, Dkt. No. 45. Though Plaintiff's counsel advances that they secured an "excellent result against a tenacious defense," the authority cited in support of this argument simply stands for the premise that a reasonable attorney fee award may exceed the amount recovered in damages. Dkt. No. 186 at 4-5 (citing *Muniz*, 738 F.3d at 226). Plaintiff's counsel fails to offer any support and ultimately fails to establish any novelty of the issues in this straightforward case regarding sexual harassment in employment. Further, the Laffey Matrix does not support reaching the requested rates because that source holds limited significance to rates in this District. *J & J Sports Prods., Inc. v. Ortiz*, No. 12-CV-05766-LHK, 2014 WL 1266267, at *3 n. 1 (N.D. Cal. Mar. 24, 2014) (citing *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)) ("The Ninth Circuit has questioned the relevance of the Laffey matrix to determining a reasonable rate in the Bay Area."). The Court finds the Laffey Matrix unhelpful in assessing the reasonableness of Plaintiff's counsel's claimed hourly rates because they do not relate to the relevant community, nor do they reflect rate determinations found reasonable and awarded to these lawyers by another court. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). By comparison, Plaintiff's counsel's requested hourly rates of $500, $700, and $1000 per hour exceed the rates courts in this District award even to exceptional and experienced attorneys prosecuting employment discrimination matters. *See, e.g.*, *Chapman v. NJ Props. Inc.*, No. 5:16-CV-02893-EJD, 2019 WL 3718585, at *4 (N.D. Cal. Aug. 7, 2019) ("$750/hour[ ] is the exception, not the norm, among ADA litigators in this district"), aff'd sub nom. *Chapman v. Panchal*, 834 F. App'x

333 (9th Cir. 2021). Considering all these factors, the rates requested by Plaintiff's counsel far exceed rates awarded in similar cases in this forum and must be reduced. *Cf. Johnson*, 2026 WL 1257369, at *3; *Dominguez*, 2023 WL 2717266, at *6.

The Court fixes the reasonable hourly rates for Hart, Lewis, and Schnebly, at $400, $500, and $600 respectively. UPS does not object to the rates sought for the certified law student, paralegals, and legal assistant, and the Court will accordingly adopt the rates sought for those timekeepers, rates of $240, $240, and $175, respectively. Lewis Decl. ¶ 41.

**C. Lodestar Calculation and Further Reductions**

The Lewis Declaration dated June 18, 2026, includes a chart summarizing the amount of work performed by Plaintiff's counsel and their staff. *See* Lewis Decl. (Dkt. No. 178-4) ¶ 41. The Court reproduces that chart below, modified to reflect the reductions identified above.

| Firm Staff | Position | Adjusted Rate | Discounted Hours | Total |
|---|---|---|---|---|
| Drew Lewis | Attorney | $500 | 68.5 | $34,250 |
| Dan Schnebly | Attorney | $600 | 303.9 | $182,340 |
| Jessica Hart | Attorney | $400 | 13.7 | $5,480 |
| Kira Vollans | Certified Law Student | $240 | 17.5 | $4,200 |
| Julie Kraus | Paralegal | $240 | 70.7 | $16,968 |
| Miranda Bennetts | Paralegal | $240 | 22.9 | $5,496 |
| Harmony Levtsenyuk | Paralegal | $240 | 7 | $1,680 |
| Andreina Gonzalez | Legal Assistant | $175 | 14 | $2,450 |
| | | | | **Lodestar $252,864** |

Further reductions are warranted from this lodestar calculation. First, "[i]t has long been the law in California that an unreasonably inflated fee request is a special circumstance authorizing the trial court to substantially reduce or deny fees altogether." *Muniz*, 738 F.3d at 226 (citing *Serrano v. Unruh*, 32 Cal. 3d 621, 635 (1982)). In *Muniz*, the trial court reduced the lodestar by 10% based on counsel's unreasonably inflated fee request. *Id.* at 226. Plaintiff's counsel's fee request in this

case was similarly inflated for the reasons discussed above, including Plaintiff's counsel's refusal to properly discount for limited success, unhelpful billing records, and Plaintiff's counsel's claimed hourly rates incongruent with the quality of representation provided. Though the Court retains discretion to eliminate fees entirely for an unreasonably inflated fee request, the Court reduces the lodestar by 10%. Lastly, the Court exercises its discretion to impose a further 10% "haircut" across the board. *Moreno*, 534 F.3d at 1112. Following these additional discounts, the total award is $204,819.84.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Mofrad's motion for attorney's fees and awards counsel $204,819.84. The Court additionally **GRANTS** Mofrad's administrative motion to file materials under seal. Dkt. No. 179.

**IT IS SO ORDERED.**

Dated: October 28, 2026

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**